## STATE *versus* CHARLES E. COOMBS.

If a person, without any present intention of stealing it, obtain possession of the team of another by falsely and fraudulently pretending that he wanted to drive it to a certain place and that he would return within a specified time, when in fact he intended not to go to such place but to a more distant one, and to be absent a longer time ; and if, while thus in possession, he, without the consent of the owner, convert the team to his own use by selling it, with a felonious intent, he will be guilty of larceny.

ON EXCEPTIONS.

INDICTMENT for the larceny of a horse, sleigh, harness, and three robes. The complainant testified that the defendant hired the team to go to Minot Corner, and promised to return it within four or five hours; that, instead of going to the place to which he hired it to go, the defendant went to other places, and finally sold the property without the complainant's consent.

The defendant testified that when he hired the team he did not intend to steal it and that his subsequent sale and disposition of the property was while he was in a state of intoxication; and his counsel invoked in his behalf the rule of law that where a party comes lawfully into possession of property by a contract of hiring, a subsequent sale and conversion of it does not constitute larceny.

The presiding Judge gave the requested instruction, but added, that if the defendant obtained possession of the property by artifice and fraud, — that is, if he went to the owner of it with a falsehood in his mouth, fraudulently pretending that he wanted the team to go to one place, and to be gone only four or five hours, when he had it in his mind not to go to the place named, but to another and a more distant place, and not to return it within the time specified, — while using the team for such other purpose for which it had not been hired, it was not lawfully in his possession; that hiring a team to go to one place, was not a hiring to go to another and a more distant place; and if the pretence that he was going to the one place was intentionally false, and was used only as a means for obtaining possession of the team, he all the time having it in his mind from the beginning to use the team for another and a different purpose, although he then had no intention of stealing it, possession thus obtained was fraudulent and unlawful, and a subsequent conversion of it to his own use by selling it, with a felonious intent, would authorize the jury to find him guilty of larceny.

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*A. M. Pulsifer*, for the defendant.

To be felonious, a taking must be with intent to deprive the owner of his entire interest in the property, against his will. Davis' Crim. Justice, 527; Roscoe's Crim. Ev., 587, 590, 595.

When the team was delivered to the defendant, the character of the taking was fixed and could not be changed by any subsequent disposition of it. Roscoe's Crim Ev., 609.

*Frye, Att'y General*, for the State, cited Davis' Crim. Jus., 531; *Regina* v. *Riley*, 14 E. & L. R., 544; *Com.* v. *White*, 11 Cush., 483.

DICKERSON, J. — Exceptions. The prisoner was indicted for the larceny of a horse, sleigh and buffalo robes. The jury were instructed that, if the prisoner obtained possession of the team by falsely and fraudulently pretending that he wanted it to drive to a certain place, and to be gone a specified time, when in fact he did not intend to go to such place, but to a more distant one, and to be absent a longer time, without intending at the time to steal the property, the team was not lawfully in his possession, and that a subsequent conversion of it to his own use, with a felonious intent while thus using it, would be larceny.

It is well settled that where one comes lawfully into possession of the goods of another, with his consent, a subsequent felonious conversion of them to his own use, without the owner's consent, does not constitute larceny, because the felonious intent is wanting at the time of the taking.

But how is it when the taking is fraudulent or tortious, and the property is subsequently converted to the use of the taker with a felonious intent? Suppose one takes his neighbor's horse from the stable, without consent, to ride him to a neighboring town, with the intention to return him, but subsequently sells him and converts the money to his own use, without his neighbor's consent, is he a mere trespasser, or is he guilty of larceny? In other words, must the felo-

nious intent exist at the time of the original taking, when that is fraudulent or tortious, to constitute larceny?

When property is thus obtained, the taking or trespass is continuous. The wrongdoer holds it all the while without right, and against the right and without the consent of the owner. If at this point no other element is added, there is no larceny. But, if to such taking there be subsequently superadded a felonious intent, that is, an intent to deprive the owner of his property permanently without color of right, or excuse, and to make it the property of the taker without the owner's consent, the crime of larceny is complete. "A felonious intent," observes Baron PARKE, in *Regina* v. *Holloway*, 2 Cor. & Kir., 61 E. C. L., 944, "means to deprive the owner, not temporarily, but permanently of his own property, without color of right or excuse for the act, and to convert it to the taker's use without the consent of the owner."

The case of *Regina* v. *Steer*, 61 E. C. L., 988, is in harmony with this doctrine. The prosecutor let the prisoner have his horse to sell for him; he did not sell it, but put it at a livery stable. The prosecutor directed the keeper of the stable not to give up the horse to the prisoner, and told the prisoner he must not have the horse again, to which the prisoner replied, "well." The prisoner got possession of the horse by telling a false story to the servant of the keeper of the stable, and made off with him. The case was reserved, and the Court held the prisoner guilty of larceny. *Commonwealth* v. *White*, 11 Cush., 483.

In the case at bar, the prisoner obtained possession of the property by fraud. This negatives the idea of a contract, or that the possession of the prisoner was a lawful one, when he sold the horse. He was not the bailee of the owner, but was a wrongdoer from the beginning; and the owner had a right to reclaim his property at any time. It has been decided that when a person hires a horse to go to a certain place, and goes beyond that place, that the subsequent act is tortious and that trover may be maintained,

State *v.* Coombs.

on the ground of a wrongful taking and conversion. *Morton* v. *Gloster*, 46 Maine, 520.

In contemplation of law, the wrongful act was continuous, and, when to that act the prisoner subsequently added the felonious intent, that is, the purpose to deprive the owner of his property permanently, without color of right or excuse, and to convert it to his own use without the consent of the owner, the larceny became complete from that moment. The color of consent to the possession obtained by fraud, does not change the character of the offence from larceny to trespass or other wrongful act. In such case it is not necessary that the felonious intent should exist at the time of the original taking to constitute larceny, the wrongful taking being all the while continuous.

It is to be observed that this principle does not apply in cases where the owner parted with his property and not the possession merely, as in the case of a sale procured by fraud or false pretences. In such instances there is no larceny, however gross the fraud by which the property was obtained. *Mawrey* v. *Walsh*, 8 Cowen, 238; *Ross* v. *The People*, 5 Hill, 294. "It is difficult to distinguish such a case from larceny," remarks Mr. Justice COWEN, in *Ross* v. *The People;* "and were the question *res nova* in this Court, I, for one, would follow the decision in *Rex* v. *Campbell*, 1 Mood. Cr. Cases, 179. The decisions, however, are the other way, even in England, with the single exception of that case, and they have long been followed here. There is nothing so palpably absurd in this as to warrant our overruling them."

We are unable to discover any error in the instructions of the presiding Judge. *Exceptions overruled.*

*Judgment for the State.*

KENT, WALTON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.