ARTHUR STANLEY *vs.* ELMER J. PRINCE, et als.

Piscataquis. Opinion November 26, 1919.

*Actions for libel. Proof of malice, where the libellous words impute the commission of a crime. Necessary elements of crime of larceny. Privileged communication.*

Action on the case for libel, by the publication by the defendants, selectmen of the town of Sangerville, in the town report of 1918 among the available assets of the town this item: "Arthur Stanley, Larceny Culvert, $50." The defendants pleaded the truth of the statement and also that the words were privileged because written and published by them in the performance of their official duty. The jury returned a verdict in favor of the plaintiff for $1500.

Upon motion for new trial by defendants it is

*Held:*

1.  The printed words, as imputing a crime, were actionable per se.
2.  The plaintiff was not guilty of larceny under the legal definition of that term.

In order to constitute larceny there must be not only a taking and carrying away of the goods of another, but there must also exist contemporaneously a felonious intent on the part of the taker which means a taking without excuse or color of right with the intent to deprive the owner permanently of his property and all compensation therefor.

3.  The jury were justified in finding such felonious intent utterly lacking. The plaintiff evidently took the metal culvert in this case after two conferences with the chairman of the selectmen and openly used it in constructing a driveway across a ditch in the highway for his employer, Mr. Coburn, expecting that Mr. Coburn would pay for it if the town officers exacted pay, or if they did not require compensation, that Mr. Coburn would receive it as had many other citizens under like conditions.

4.  It is the duty of town officers charged with the expenditure of money to make a full and detailed report of all their financial transactions in behalf of the town, with a full account of receipts and disbursements, of indebtedness and resources, together with a list of all delinquent tax payers and the amount due from each. R. S., Chap. 4, Sec. 45. A report published within the requirements and spirit of that statute would doubtless be regarded as privileged.

5.  When, however, the selectmen in this case went further and published the libellous charge of larceny against the plaintiff they transcended their duty, stepped outside the protection of privileged communication and became amenable to the law. The privilege is only commensurate with the duty.

6.  The verdict is not excessive. The plaintiff is a reputable citizen holding an important position with a local industry. The defendants by virtue of their official position were also men of influence whose words carried weight. These town reports were distributed among the voters of the town. Copies must be deposited in the office of the selectmen or clerk there to remain as a part of the archives of the town. R. S., Chap. 4, Sec. 45. Such reports are also required by statute to be filed in the State Library there to remain as a part of the archives of the State. R. S., Chap. 3, Sec. 15. Printed defamation is more potent than spoken because more permanent. A criminal charge made under such circumstances is therefore a most serious matter.

Moreover the attitude and conduct of the defendants throughout the whole transaction were such as to warrant the jury in awarding punitive damages if they saw fit to do so.


Action on the case for libel. Verdict for plaintiff. Defendant filed motion for new trial. Judgment in accordance with opinion.

Case stated in opinion.

*C. W. Hayes, and Hudson & Hudson,* for plaintiff.

*W. R. Pattangall, J. S. Williams, and H. E. Locke,* for defendants.


SITTING: CORNISH, C. J., HANSON, DUNN, MORRILL, DEASY, JJ.

CORNISH, C. J.   Action on the case for libel.   Plea, general issue, with brief statement, alleging that the words complained of were true, and also that they were qualifiedly privileged because written and published by the defendants in their capacity as selectmen of the town of Sangerville and in the performance of their official duty.   A verdict for the plaintiff in the sum of $1500 the defendants ask to have set aside on a general motion.   No exceptions were filed.

The following facts appear from the record:

The plaintiff is a construction engineer in the employ of the Old Colony Woolen Mills Company of Sangerville.   Mr. L. J. Coburn is Vice President, Assistant Treasurer and Manager of that Company. In September, 1917, the plaintiff who had been engaged in superintending the remodelling of Mr. Coburn's residence, had a crew of men constructing a concrete driveway from the garage, past the side of the house to the main street.   He needed a metal culvert at the ditch, and asked Mr. Coburn where he could secure one.   Mr. Coburn said he could obtain one from the town as he understood it was customary for the town to furnish them.

At that time the town had two metal culverts on hand.   The plaintiff asked Mr. Prince, the first selectman, if he could have one for Mr. Coburn's driveway.   Mr. Prince replied that he would take the matter up with the road commissioner and the other selectmen, and the plaintiff testifies that Mr. Prince also said that "it was customary but not compulsory to let people have culverts."   Mr. Prince's account of this interview is that the plaintiff said "he was putting in a driveway for Mr. Coburn and wanted to know if the town furnished driveways or culverts for folks, culverts to put under driveways.   . . . .   I told him we had in some cases and some they had not."   There is no material difference in these two statements.   Within a day or two the plaintiff spoke to Mr. Prince again about the matter and Mr. Prince told him that he had been busy and had not seen his associates.   When the work had progressed so far that the culvert was needed immediately, the plaintiff went to the town hall where the culverts were stored, took one, carried it to the Coburn residence, placed it in the ditch and embedded it in concrete.   The road commissioner, Mr. Hill, shortly after this asked the plaintiff if he had taken the culvert and he told him that he had and the reason for so doing.   The next step was a consultation between the three selectmen, the road commissioner and their attorney,

followed by a letter from the attorney, the original of which was not in evidence and the tenor of which the parties did not agree upon. The plaintiff says the letter demanded $50 in payment of the culvert within three or four days, otherwise the plaintiff would be arrested. The defendants contend that it stated that unless adjustment was made within forty-eight hours the attorney would proceed as he understood the law. No reply was sent. A week later, the plaintiff was arrested for larceny, was tried before the Municipal Court and found guilty. An appeal was taken to the March Term, 1918, of the Supreme Judicial Court for Piscataquis County. At the conclusion of the evidence at that term the presiding Justice ordered the jury to return a verdict in favor of the respondent, Mr. Stanley, and he was accordingly discharged. In January, 1918, the plaintiff was arrested on a special writ in a civil action brought by the selectmen in the name of the town to recover the value of the culvert placed at $50, and gave bond for his release. This suit was settled at the same term the criminal trial was held.

We come now to the alleged libel which was contained in the town report of Sangerville prepared and published by these defendants for the municipal year 1917-1918, and presented at the March meeting, 1918. On page 18 of that report the defendants incorporated under the list of assets available these words "Arthur Stanley larceny, culvert, $50."

This charge forms the basis of the present action.

The law of libel is so well established and so familiar that it needs no discussion. A succinct statement of the several principles involved in this case is sufficient. It cannot be doubted that the printed words impute a crime and are libellous and actionable per se. No other reasonable inference can be drawn by the reader of the report than that Arthur Stanley was guilty of the crime of larceny in stealing a culvert from the town of Sangerville, the value of which was fifty dollars. Actual malice need not therefore be proved. Malice in law is sufficient. Defamatory words imputing a crime are presumed to have been uttered maliciously. If the case stopped here the only question would be one of damages.

We come therefore to the points raised in defense.

1. In the first place the defendants pleaded the truth of the allegation and persisted in the contention before the Law Court. Such a plea if established was a complete justification under the statute

"unless the publication is found to have originated in corrupt and malicious motives." R. S., Chap. 87, Sec. 45. *Pierce* v. *Rodliff* 95 Maine, 346; *Pease* v. *Bamford,* 96 Maine, 23.

The defendants urge that the plaintiff was guilty of larceny under the legal definition of that term. This contention we cannot endorse.

In order to constitute a larceny there must be not only a taking and carrying away of the goods of another, but there must also exist contemporaneously the felonious intent, the animus furandi, on the part of the taker, which means a taking without excuse or color of right with the intent to deprive the owner permanently of his property and all compensation therefor. This felonious intent is the very gist of the offense. Here that essential element is entirely lacking. The plaintiff had a justifiable excuse. He testified that he had no purpose to deprive the town of their compensation. He expected that Mr. Coburn would pay for the culvert if the town officers exacted pay; or if they did not require compensation, that Mr. Coburn would receive it as had many other citizens under like conditions. All the circumstances bear this out. The jury were justified in finding that the delay or hesitancy on the part of the Chairman of the Selectmen did not arise over the question of allowing Mr. Coburn to have the culvert, but whether he should have it free of charge. That was undoubtedly the idea in the mind of Mr. Stanley and theft was farthest from his thought. To take an article of the size of this metal culvert, eighteen feet long, transport it in broad daylight through the streets from the town hall to the Coburn residence, leave it there over night, and then the next day to embed it in the concrete driveway at the ditch, in the face and eyes of Mr. Prince, the Chairman of the Board, who lived directly across the street from the Coburn residence, hardly comports with the crime of larceny or the practices of a thief. The jury must have found that the defense of truth could not be sustained and their conclusion is clearly correct.

2. In the second place the defendants claim that believing the charge of larceny to be true, they published it in their report as selectmen without malice toward the plaintiff and that therefore it was privileged.

"A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to certain other persons to whom he makes such communication in the

performance of such duty." 17 R. C. L., page 341. That is the settled rule. *Bradford* v. *Clark*, 90 Maine, 298; *Sweeney* v. *Higgins*, 117 Maine, 415.

It is the duty of town officers charged with the expenditure of money to make a full and detailed report of all their financial transactions in behalf of the town, with a full account of receipts and disbursements, of indebtedness and resources, together with a list of all delinquent tax payers and the amount due from each. This is required by statute. R. S., Chap. 4, Sec. 45. A report published within the requirements and spirit of that statute would doubtless be regarded as privileged. The defendants complied with that statute and were free from blame, when under the heading, "Financial Statement" they itemized the resources of the town and inserted this item, "Due from Arthur Stanley, culvert, $50." That showed that Mr. Stanley was a debtor to the town in that amount and was properly included among the assets. No suit for libel could be maintained on that charge and none was attempted. That was a privileged communication.

When however the selectmen went further and in another part of their report published the libellous charge of "Arthur Stanley, larceny, culvert $50." they transcended their duty, stepped outside the protection of privileged communication and became amenable to the law. The privilege is only commensurate with the duty. It was their duty to publish the fact of the indebtedness from the plaintiff among the resources of the town. This they did in another place, as we have seen, but they far exceeded their duty when they made an independent entry and charged him with the crime of larceny. It would seem that they sought to avail themselves of the occasion merely as a means of bringing the plaintiff into public disgrace. Under such circumstances the occasion furnishes no justification. Shaw, C. J. in *Bradley* v. *Heath*, 12 Pick., 163 at 165.

The defense of privileged communication cannot avail.

3. This leaves only the question of damages to be considered by the court. The verdict is for $1500 and the defendants argue that this is grossly excessive. We cannot so view it.

The plaintiff was a reputable citizen, holding an important position with the Old Colony Woolen Mills Company. The defendants by virtue of their official position also were men of influence whose words carried weight. These town reports were distributed among the

voters of the town, and copies must be deposited in the office of the selectmen or clerk, R. S., Chap. 4, Sec. 45, there to remain as a part of the archives of the town.   Moreover under R. S., Chap. 3, Sec. 15, such reports are required to be filed in the State Library, there to remain as a part of the archives of the State.   Printed defamation is more potent than spoken because more permanent.   It endures. A criminal charge made under such circumstances is therefore a most serious matter.

Moreover the attitude of the municipal officers from the beginning seems not to have been that of officials endeavoring with fairness and justice to perform their public duties, but rather that of partisans having some grudge to gratify either toward this plaintiff or Mr. Coburn.   There is strong inferential evidence of actual malice, malice in fact.   The speedy notification for settlement or arrest, the arrest and trial that followed with no delay, the claim of $50 for a metal culvert costing and worth about $20, the service of the civil writ therefor by arrest, instead of the usual course by summons when so far as appears there was no pecuniary necessity therefor, the setting up of the truth in the pleadings by way of justification, *Davis* v. *Starrett*, 97 Maine, at 577, and the adherence to the same in argument, even after the Supreme Judicial Court had discharged the plaintiff from arrest under this same charge, all this reveals a persistent purpose on the part of the defendants to harass and humiliate the plaintiff with respect to a matter which in itself and as among broad-minded business men would be regarded as trivial.   It was a case therefore in which punitive damages might well be awarded if the jury saw fit to grant them.   In view of all the facts we cannot say that the amount of the verdict is manifestly excessive.

The entry will be,

> *Motion overruled.*
> *Judgment on the verdict.*