Florence K. Wheeler

*vs.*

Phoenix Assurance Company, Ltd.

Somerset.   Opinion, March 7, 1949.

*Benjamin L. Berman,*
*David V. Berman,* for plaintiff.

*Locke, Campbell, Reid and Hebert,*
*Robert W. O'Connor,* for defendant.

Sitting: Sturgis, C. J., Thaxter, Murchie, Tompkins, Fellows, Merrill, JJ.

FELLOWS, J. This is an action to recover damages under an automobile fire and theft insurance policy, and the case comes to the Law Court from the Superior Court of Somerset County on exceptions, by the defendant company, to the acceptance of report of referee. Before hearing and by agreement the name of the defendant company was changed in the writ and pleadings to Phoenix Assurance Company, Ltd., a company authorized to do business in Maine. The exceptions are sustained.

The only question in issue is whether the referee was correct in ruling that, under the circumstances here shown, there was a "theft" within the meaning of the policy.

The referee found as facts, and his finding is supported by the evidence, that the plaintiff's automobile was subject to use, possession and control by her husband, Charles Wheeler, a travelling salesman, who stood in the position of the insured. On the afternoon of November 14, 1947 Wheeler told a young man named Philip Campbell to park the car for him near an office in Lewiston, where Wheeler intended to make a business call. Campbell took the car for the purpose of parking it. On arrival at this office, however, Wheeler found neither Campbell nor the car. The following day the car was located in a damaged condition in Portland, where Campbell had taken a young lady on an extended ride, and it had been in a collision. The referee found that "this taking and use by Campbell was without the authority or consent, expressed or implied, of Wheeler. Campbell, I find, intended to return the car when his unauthorized expedition should end."

The policy is in the "Standard Form." The coverage purchased was "A Bodily Injury Liability," "B Property Damage Liability," "C Medical Payments," "D Comprehensive—Loss of or Damage to the Automobile, except by Collision but including Fire, Theft and Windstorm."

The definition of this "COVERAGE D," as contained in the small print under "INSURING AGREEMENTS," is

"COMPREHENSIVE—LOSS OF OR DAMAGE TO THE AUTOMOBILE, EXCEPT BY COLLISION: To pay for any loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

The defendant contends that the word "theft" in this policy should be given its usual and common law meaning, and that to recover there must be an *intent* to permanently deprive the owner of his automobile. The plaintiff, on the other hand, claims that in this case and under these circumstances the meaning is not so limited, and the usual proof of larceny is not required.

A contract of insurance, like every other contract, must receive a reasonable construction, and the whole contract is to be considered. Here, the insured purchased a "theft" policy. She did not buy "collision" insurance. The danger of collision is always imminent, and collision insurance demands additional premium. Was this unauthorized taking by Campbell, therefore, a "theft" within the meaning of the policy, thus permitting a recovery? The referee found that Campbell intended to return the car, and the intent to permanently deprive the owner was at all times lacking. The referee further found that "Campbell did not commit larceny," although "he did violate the statute against use of an automobile without authority of the owner. R. S., (1944), Chap. 19, Sec. 120." The conclusion of the referee was that "unauthorized taking and use," was a "theft" within the meaning of the policy, and that the plaintiff was on that account entitled to recover.

We find no opinion in Maine as a precedent, and our attention has been called only to decisions of other states. The general and majority rule is stated as follows:

"The term 'theft' has not been uniformly defined. The difference of opinion arises over the question whether the term is practically synonymous with the term 'larceny' or whether it has a more extensive meaning. There is an undercurrent of thought, however, that the usual meaning attached to the term 'theft' is substantially equivalent to that attached to the term 'larceny,' and this is the majority view.

A 'theft' within the meaning of a theft policy is shown if possession is actually taken by a wrongdoer, and if an intent to steal exists or may be inferred. This is true even though the possession is but temporary.

To warrant a recovery on a policy insuring an automobile against theft, there must be more than a wrongful taking; the taking must be with the intent to steal. The intent to steal is a necessary ingredient of the offense and may be inferred from the facts and circumstances of the case."

5 American Jurisprudence "Automobiles," 820, Sections 568, 569, and cases, with A. L. R. Annotations, there cited.

See also 45 C. J. S. 951, Sec. 886.

The small minority of cases in this country that have permitted recovery under some "theft" policies, where facts were similar to the case at bar, are collected in the A. L. R. Annotations above referred to. It will be noted, however, that in many of the cases that support this minority view, the State statutes defining larceny are held broad enough to mean use without the owner's consent.

In Maine our "conceptions of personal and property rights are based upon the common law." *Conant* v. *Jordan*, 107 Me. 227, 237; 77 A. 938; 31 L. R. A., N. S. 434. "Theft," under common law, is a popular term for larceny. Bouvier

Law Dictionary (Third Edition) ; Words and Phrases. It is in fact a synonym for larceny. Webster's New International Dictionary. This court in criminal prosecutions and in a libel suit has considered larceny as a carrying away with *animus furandi*. There must be a felonious intent to deprive the owner permanently. *State* v. *Coombs,* 55 Me. 477; 92 Am. Dec. 610; *Stanley* v. *Prince,* 118 Me. 360; 108 A. 328.

Cases, stating the rule of the overwhelming majority of states and including courts we most highly respect, hold that the word "theft," as used in an insurance policy, is definite and well established. There is no ambiguity. It means a taking with intent to deprive, and with no intention to return, as was found to the contrary by the referee in the case at bar. "Theft" is not necessarily the *permanent deprivation* of property. It is the taking with that *intent.*

Chapter 19, Section 120 of the 1944 Revision of the Statutes provides that whoever uses a motor vehicle without authority from its owner is guilty of a misdemeanor. This includes any unauthorized use, whatever the intention. It might apply to a member of the family, or to a neighbor for an emergency, with all intention on the part of the user to make immediate return. It does not appear to be a so-called "larceny statute," although a larceny would naturally be included in its terms. On the other hand, there is no theft unless there is at some time the intent to steal.

The plaintiff suggests that by R. S. (1944), Chap. 118, Sec. 25, the legislature has placed an unauthorized use within the scope of criminal larceny. This section 25, under the title of Malicious Mischief, provides that whoever wilfully or mischievously takes or uses any vehicle, boat, or aeroplane without the consent of the owner is guilty of a misdemeanor, but it expressly states that the provisions of the section do not apply to any case of taking "with intent to steal."

It may well be argued that in many instances the intention to steal an automobile could properly be inferred from the mere fact of taking without the owner's permission, especially where the taker was not a person who stood in friendly or blood relationship. Here, however, the opposite fact is found by the referee. He found no intent to steal, and he could so find under the evidence. His finding of fact is final. *Courtenay* v. *Gagne,* 141 Me. 302; 43 A. (2nd) 817.

A taker of an automobile without permission may be expected to pay for damage resulting from his trespass, but it does not follow that, if he cannot pay, the trespass can at all times be construed as theft. The legislature of Maine has not yet seen the necessity to make a larceny statute so inclusive, and any person may receive from insurance companies complete protection by application for the protection, and paying the premium.

This is a case where the definite word "theft," with meaning well understood for generations under our law, is opposed by the idea that its meaning should be here broadened to "unauthorized use." The referee having found no intent to steal, we are of opinion that he was in error in holding that "unauthorized use" was equivalent to "theft." The Superior Court should not have accepted the report.

*Exceptions sustained.*