STATE OF MAINE
*vs.*
PAUL E. GREENLAW

STATE OF MAINE
*vs.*
THOMAS J. LAYTE

Cumberland.   Opinion, March 26, 1963.

*Arthur Chapman, Jr., County Attorney*, for the State.

*Basil A. Latty*, for the Defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

SULLIVAN, J.   By separate indictment each respondent was accused of robbery.   The same criminal incident was

detailed in each accusation and the respondents were jointly tried by jury. Verdicts of guilty were returned. The respondents here prosecute their exceptions to specific instructions rendered to the jury by the presiding justice, to the refusal of the justice to direct verdicts of not guilty, and to communicate certain requested instructions to the jury. Respondents appeal from the denial of their motions for new trials.

The indictments charged that at Portland on April 4, A. D. 1961 each respondent respectively:

"- - - - on one George W. Berry feloniously did make an assault, and by force and violence, One motor vehicle, to wit, a 1959 Ford four-door taxicab, color red and yellow, of the value of Eighteen hundred dollars, of the property of Central Cab Company, Inc., a corporation - - - - - - - from the person of said George W. Berry feloniously did steal, take and carry away - - - -"

The case record affords this narration. On April 4, 1961 the respondents and three male companions had consigned and abandoned themselves to a drinking bout and carouse. They rented a taxicab operated by George W. Berry and paid him the fare for a trip to Biddeford but forthwith altered their plan and instructed Berry to proceed to Westbrook. En route, at the Portland City Hospital Layte voiced a desire to visit a friend and inmate and had Berry stop the cab and turn off the motor. Berry was at the driver's wheel. Greenlaw sat at Berry's right and Layte occupied the other end of the front seat. The other three passengers were in the rear portion of the cab. Greenlaw put his hand into his shirt and pressed something into Berry's ribs, advised Berry that he, Greenlaw, had a gun and demanded Berry's money. Layte left the cab through its right front door, passed in front of the vehicle and opened the left front door. He seized Berry's left arm and put his knee against Berry. Layte's other hand remained

in Layte's pocket. He admonished Berry that he, Layte, had a knife, demanded Berry's money, said he was taking the cab and attempted to push Berry over to the middle of the seat. The companions fled out of the back of the cab and disappeared. Greenlaw gripped Berry's shirt. A nurse on the hospital veranda heard the altercation and witnessed the struggle. She yelled. Layte, distracted or alarmed momentarily desisted from his attack on Berry who wrenched himself free from Greenlaw and propelled himself out of the cab. Berry ran into the hospital to notify the police by telephone. Layte accompanied by Greenlaw drove the cab away in the direction of Westbrook. The time was then approximately 12:45 P.M.

Within the hour in Westbrook at a distance of one-half mile from Portland City Hospital Layte and Greenlaw were found lying asleep in the snow not far from the parked and empty taxicab.

The taxicab possessed a yellow body and red fenders. Painted upon each side in three inch letters of red was the name, Central Cab Company. The vehicle was designedly a cynosure adapted to attract public gaze and notice. Any prospect of stealing, secreting and marketing it in its conspicuous state must be regarded as highly delusive.

The statute defining and punishing robbery reads as follows:

> "Whoever by force and violence or by putting in fear, feloniously steals and takes from the person of another property that is the subject of larceny is guilty of robbery and shall be punished - - - - "
> R. S. (1954), c. 139, § 16.

Robbery has been described as:

> " - - - - It is 'larceny committed by violence from the person of one put in fear'."
> State v. Perley, 86 Me. 427, 432.

R. S., c. 132, § 1 generically defines larceny and assigns its punishment:

> "Whoever steals, takes and carries away, of the property of another, money, goods or chattels, - - - - is guilty of larceny; and shall be punished - - - -."

For larceny to obtain the taking of a thing must generally be accompanied by a purpose to deprive the owner or possessor of the chattel permanently.

> "In order to constitute a larceny there must be not only a taking and carrying away of the goods of another, but there must also exist contemporaneously the felonious intent, the animus furandi, on the part of the taker, which means a taking without excuse or color or right with the intent to deprive the owner permanently of his property and all compensation therefor. The felonious intent is the very gist of the offense - - - -."
> *Stanley* v. *Prince*, 118 Me. 360, 364.

> " - - - - This court in criminal prosecutions and in a libel suit has considered larceny as a carrying away with animus furandi. There must be a felonious intent to deprive the owner permanently. - - - -."
> *Wheeler* v. *Phoenix Assurance Co.*, 144 Me. 105, 109.

> " - - - - 'A felonious intent' observes Baron Parke, in *Regina* v. *Holloway*, 2 Cor. & Kir., 61 E. C. L., 944, 'means to deprive the owner, not temporarily, but permanently of his own property, without color of right or excuse for the act, and to convert it to the taker's use without the consent of the owner.' "
> *State* v. *Coombs*, 55 Me. 477, 480.

> "A conviction for larceny will not be sustained unless a felonious intent at the time of the taking is shown. Generally, the intent must be to deprive the owner permanently of the property;

merely borrowing property for a temporary use does not constitute larceny. Intent is a jury question."

Underhill's Criminal Evidence, 5th ed., Herrick, Larceny, Vol. 3, P. 1440. See, also, Larceny, 32 Am. Jur., § 37, P. 927; Wharton's Criminal Law, 12th ed., Ruppenthal, Larceny, Intent, Vol. 2, § 1122, P. 1431; *Poster* v. *Andrews,* 183 Tenn. 544, 194 S. W. (2nd) 337, 339; *Putinski* v. *State,* 223 Md. 1, 161 A (2nd) 117, 119.

The presiding justice in his instructions to the jury discoursed upon the applicable elements of the inclusive and complex crime of robbery, as follows: (italics supplied).

" - - - - You will note from my reading of the statute that in order for a person to be found guilty of robbery, such person must use force and violence, or place the other person, in this case, George Berry, in fear, *and have feloniously stolen and taken* from George Berry *the automobile* described in the indictment, and in the custody of George Berry - - - -

"However, if you find that either force and (sic) violence was used, or Berry was put in fear, then there is another element which you must consider, and that is, did the respondents intend to commit a *larceny.* The *intent to commit the crime* is an essential element and requires proof on the part of the State - - - -

" - - - - The respondents say to that: 'No, we are not guilty even though you find that the evidence is sufficient to satisfy you that the elements of force and violence or fear, and of the *taking of the automobile,* as we were at that particular time in such a state of intoxication as not to be able to form an intent which is a necessary element to the commission of the crime of robbery.' - - - -

"If you find, as a matter of fact, the respondents did either use force and violence, or place Berry

in fear, and *did steal the automobile, with the intent to commit larceny,* then the respondents, in order to be excused from the commission of the offense, must satisfy you by a preponderance of the evidence, that is by the weight of the evidence, that they were in that state of intoxication which stripped them of the mental faculties necessary to form an intent - - - -

" - - - - And if you find that they did take part, or did use force and violence, or fear, then you go on to the next step as to whether *they did actually take from another property of value* - - - -

" - - - - if they had that faculty to form an intent *to take from the possession of George Berry, this taxicab with the intent to deprive him of it,* then they would be guilty of the offense (robbery)

"If you find that the respondents or either of them, on the facts as you determine them to be, after applying the law that I have given you, are not guilty of robbery, that does not end the case, because then you have to go to the question of larceny. Generally speaking, all the rules that I have given you pertaining to robbery apply to larceny, excepting as you will see from my reading of the statutes pertaining to larceny. Our Legislature has said: *'Whoever commits larceny from the person of another shall be punished* - - - -" You see that in the first instance, robbery is nothing more or less than larceny, but a grossly more serious offense. Of course, you will remember in robbery is needed the force and violence, or fear. In larceny the law does not require that there be force and violence, or fear, but the law does require intent - - - - Your first thing is to *consider as to whether there was a taking of this automobile* by the respondents. Of course, *if there was no taking,* there wouldn't be any offense committed. *If you find* on the evidence, and are satisfied, *that there was a taking,* then, of course, you have to consider *by that taking did they intend to deprive that person the possession of the property* of

which he was possessed. Now, there, again the State says that the respondents did intend to commit the larceny and says to you that you may infer that intent from the commission of the act itself - - - - - - - If you find in the first place that there was no taking, and you again find *that there was no intent to commit the larceny; no intent to deprive the owner or person in possession of the automobile, there wouldn't be any larceny;* that would end that, and they would be entitled to a *verdict of not guilty of larceny.* If you find there was a taking and there was an intent, then you consider the affirmative defense. (intoxication) - - - - - - "

At the close of the presiding justice's charge to the jury the respondents requested that the following instruction be given:

"If you find that Respondents intended to take the cab but to take it only temporarily, then your verdict as to robbery and also larceny must be not guilty."

The presiding justice refused to comply "except as it may already be covered by my instructions." Respondents have perfected their exception to such judicial ruling.

In *York* v. *Railroad Co.,* 84 Me. 117, 128 it is stated:

" - - - - He (the judge presiding) shall do all such things as in his judgment will enable the jury to acquire a clear understanding of the law and the evidence and form a correct judgment - - - - "

The court's instructions nowhere contain in commonplace or familiar language any explanatory notification or interpretative amplification to the jury apprising them that to verify robbery or larceny the evidence adduced must demonstrate beyond any reasonable doubt a taking by a respondent with intent to deprive the chattel's owner or possessor *permanently* of the object appropriated. Such expressions as "feloniously stolen and taken," "commit a

larceny," "steal the automobile, with the intent to commit larceny," were utilized. To the legally subtilized such clauses and phrases have a clear but scholastic connotation. To a jury of lay folk they are doubtlessly just recondite vocabulary. Indeed, a comprehensive definition of the crime of larceny is not easy of attainment even for the legal elite.

> " - - - - Notwithstanding the frequency of the offence, neither law writers nor judges are entirely agreed on its exact definition - - - - "

> May's Criminal Law, Beal's, 2nd ed., Larceny, § 270. See, also, Wharton's Criminal Law, 12th ed., Vol. 2, Larceny, §§ 1096, 1097.

The intent to deprive the owner permanently of his property is of the very gist of the offense of larceny. *Stanley* v. *Prince, supra.*

The instructions include such diluted or broad phraseology as "whether they did actually *take* from another property of value," "an intent to *take* from the possession of George Berry, this taxicab with the intent to deprive (how long?) him of it," "whether there was a *taking* of this automobile," "no taking," "if you find - - that there was a *taking* - - - by that taking did they intend to *deprive* that person the possession of the property."

Robbery is a major crime. Such an estimation is attested by the punishment fixed at any term of years. R. S., c. 130, § 16. By contrast the mere taking of an automobile without authority from its owner or without the consent of the owner or custodian has been classified by the Legislature as a misdemeanor. R. S., c. 22, § 149, as amended; R. S., c. 131, § 25. In a trial of the gravity of the case at bar the respondents were rightfully entitled to an exposition of the indispensable element of *animus furandi* or the essential intent to deprive *permanently*. There was evidence at the trial of a hue and cry raised by

the nurse and by Berry at the City Hospital, a crisis potentially adapted to have occasioned and precipitated the flight of the respondents with the taxicab. There was the brief dominion of the respondents over the vehicle and their early abandonment of it - - the egregious unmarketability of the extravagantly colorful automobile - - the dissipated condition and mettle of the respondents. Such circumstances could well have posed a crucial jury question as to whether the expropriation of the taxicab at midday in a public place was a larcenous theft or a sodden escapade. It was the constitutional due of the respondents to have that issue as to the prevalence of finality in the intent motivating their taking of the taxicab unmistakably and beyond peradventure submitted to the jury for resolution and decision.

While in technical and juristic terms the justice presiding academically and formally told of felonious stealing and larceny, as such, we are constrained to conclude that the instructions in their totality generate an irresoluble doubt as to the adequacy of the jury understanding of the law applicable to the fact of taking, here. The instruction requested by the respondents would have afforded an elucidation which under the circumstances must be deemed to have been necessitous and probably would have supplied definitive enlightenment unpossessed by the jury. There was prejudicial error and the exception must be sustained. *State* v. *Quigley,* 135 Me. 435, 442.

By inadvertence the following instruction was unfortunately delivered in the court charge:

"In arriving at your decision, of course, as I previously indicated, you must consider all of the evidence; you must consider not only the evidence that was presented here, but you may consider the evidence that was nonexistent, or was not presented. You evaluate the witnesses; you give

such credence to their testimony as you see fit to give it."

To this communication no objection was noted but, in as much as it may have misled the jury and motions for new trials are before us, we deem this manifest error in law an efficient cause for setting aside the verdicts below. *Pierce* v. *Rodliff*, 95 Me. 346, 348; *State* v. *Meservie*, 121 Me. 564, 566; *State* v. *Smith*, 140 Me. 255, 285; *State* v. Wright, 128 Me. 404, 406.

Because of the foregoing opinion it becomes unnecessary to weigh other exceptions.

The mandate must be, in each case:

> *Exception sustained,*
> *Appeal sustained,*
> *Motion for new trial granted.*