**STATE of Maine**

**v.**

**Henri BOISVERT.**

Supreme Judicial Court of Maine.

Dec. 26, 1967.

Hubert Ryan, County Atty., Farmington, Richard S. Cohen, and Daniel G. Lilley, Asst. Attys. Gen., Augusta, for plaintiff.

William E. McCarthy, Rumford, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal. The Grand Jury of Franklin County returned separate indictments against three brothers from the Province of Quebec, charging each with the crime of robbery. The indictments alleged an assault upon a warden of the Inland Fisheries & Game Department and a taking from his person by force and violence a .38 caliber revolver which was the property of the Department. The three brothers were tried together on November 1 and 2, 1966, and the jury returned verdicts of guilty of larceny from the person against all three. Only the defendant Henri Boisvert is here on appeal.

The defendants did not take the witness stand and all the testimony as to the events on the highway came from the warden and a Mrs. Pelletier, who was a companion of the three defendants at the time the warden stopped their car, both being presented by the State.

Thus it was undisputed that some time after midnight on September 24, 1966, Warden Savage, whose district is a wilderness area extending to the Canadian border, received a telephone call which impelled him to dress in his uniform and go out upon Route 16 to stop and examine automobiles headed toward the border. He stopped one car, made no arrest and continued on to a point near a highway bridge across the Kennebago River. Observing the glow of approaching headlights he placed his pickup truck crossways of the road in such a manner that it occupied more than one-half of the highway. When the approaching car was about 100 yards away the warden stepped into the part of the highway which remained clear so that he was illuminated by his own headlights and signalled the oncoming car to stop with his lighted flashlight. Mrs. Pelletier was able to observe and recognize his signals from a long distance. Warden Savage was then dressed in the full uniform of the Department with a badge on the left breast of his red winter issue coat and on his uniform hat. His pickup truck had the distinctive antennae of a two-way radio on the side facing the approaching car.

The car failed to stop but swerved to the right towards the warden, the mirror on the driver's side striking the warden on the elbow as he jumped from its path. The right hand wheels of the car went into the ditch and its motor stalled but the driver kept trying to restart the motor and the car continued to move down the hill, partly in the ditch, with its starter "grinding" while the warden ran beside it shouting for the driver to stop. The front window was down on the driver's side and the warden ran with his hand on the door. He hit the windshield with his flashlight two or three times. When the car continued on, the warden, who was running along beside the car's front tire shouting for the defendants to stop, took out his pistol and fired a shot at the tire. Achieving no results, he ran another ten yards and fired another shot at the tire. The car continued down the hill and stopped on the bridge.

The warden opened the door and the driver got out and dropped the car keys which the warden picked up and put in his pocket. The warden saw the passenger in front putting a pistol under the front seat. When the warden came around to that side of the car, the passenger threw the pistol to the

driver. The warden returned to the driver and as he was reaching for the pistol, which the driver was holding behind him, the brother in the back seat confronted him with a rifle pointed at the warden, although Mrs. Pelletier tried to restrain the brother. He held the rifle on the warden on one side and someone held the pistol on him on the other. The defendant then took the warden's revolver and flashlight. The man with the rifle marched the warden back 136 paces up the hill near his truck and the defendant, who accompanied them, got in the truck, backed it to the side of the road, tore the wires from its ignition system and rendered his two-way radio inoperable. The driver of the car demanded his keys which the warden gave him. Then the men motioned with the rifle for the warden to return to their car. When the rifle was turned away from him Warden Savage ran toward the woods and the men then ran for their car which was then driven away toward the border. It was then about 2:45 A.M. and very foggy.

The only material difference in the testimony of Warden Savage and Mrs. Pelletier is that while he said he believes that his revolver was pointed at the ground when the car stopped and the men got out, she testified that after the car stopped the warden pointed his gun at the driver, "making signs for him to get out."

As a result of cooperative efforts by Canadian and American officers the automobile was located the next day, and that evening, while another brother involved was being interviewed by Corporal Roy of the Royal Canadian Mounted Police in Quebec, that brother made a telephone call as a result of which the defendant came into Corporal Roy's office and placed the warden's revolver on Roy's desk before a word had been spoken by the officer.

The defendant has designated eight Points on Appeal. Although the explanation for our disposition of this case is found in Point No. 8, as this matter may be tried again we believe that a brief consideration of several of the other points would be of assistance to the parties. We state some of these Points on Appeal in the language used by the defendant.

"Point No. 1. The Court erred in admitting into evidence the Smith and Wesson revolver over the respondent's objection."

When the State offered the revolver in evidence, defendant's counsel objected. However, because he did not state the ground or grounds upon which he objected he cannot assign this Point as error. M.R. C.P. Rule 51 requires that one objecting to a ruling of a presiding justice must,

"* * * at the time the ruling or order of the court is made or sought, [make] known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefore * * *."

The comparatively recent adoption of this rule made no change in this respect in long standing Maine procedure. Our courts have repeatedly held that an objection to the offer of evidence and exhibits which is not accompanied by a statement of grounds for the objection cannot be relied upon on appeal, the purpose of the requirement being to enable the court to rule advisedly. State v. Plunkett, 64 Me. 534 (1874); State v. Savage, 69 Me. 112 (1879); State v. Budge, 127 Me. 234, 142 A. 857 (1928).

As this matter may again come to trial we will note briefly that there is no merit to the defendant's present contention that the rule of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) controls the admission of the revolver in evidence. The defendant's argument that the State was required to prove that the Canadian officer in Quebec warned the defendant of his constitutional rights before he accepted the revolver from the defendant is destroyed by Schmerber v. State of Cal., 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) which es-

tablished the principle that *Miranda* applies only to *testimonial* admissions, none of which are involved here.

"Point No. 4. The Court erred in his instruction 'So really, here in this particular case you can return any one of four verdicts * * * the next possibility is the offense of larceny from the person.' "

M.R.C.P. Rule 30(b) then effective, reads in part:

"No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■ Counsel here did not state the grounds for his objection and cannot assign it as error. The requirement is not a mere formality. The object of the rule is to insure that the jury is correctly informed as to the applicable law, a purpose benefitting both State and defendant. The rule places responsibility for this upon counsel as well as the Court to the extent that counsel who believes an erroneous instruction to have been given must not only state his objection distinctly—as defendant did here—but he must also make clear to the Court his reason for believing the Court's language to be erroneous. The purpose for the rule is not simply to preserve the defendant's right to a *new* trial in case of erroneous instruction but also to make possible a correction in the judge's charge so that the jury may be properly instructed at *this* trial.

■ Point No. 5 concerns the Court's refusal to give certain requested instructions. It was the defendant's contention that the act of the defendant in disarming the officer was justified self-defense and the defendant's requests Nos. 12 and 14 would have required the justice to instruct the jury that the act of the warden in firing his revolver at the tire of the defendant's car was an illegal act and as a matter of law a wanton abuse of discretion. The justice refused

to give the instructions and correctly left to the jury the determination of whether, under all the circumstances, the warden used excessive force to compel the defendants to stop their car in compliance with 12 M.R.S.A. Sec. 3051 which requires the operator of a vehicle to stop immediately upon the signal of a uniformed game warden.

■ Requested instruction No. 16. "A guilty intent must be proven by circumstantial evidence * * *" This instruction was correctly refused. A guilty intent may be established from inferences reasonably drawn by the jury from facts which have been proven beyond a reasonable doubt, including acts and statements of a defendant. State v. Gatewood, 169 Kan. 679, 221 P.2d 392 (1950); State v. Johnson, 74 Idaho 269, 261 P.2d 638 (1953); Koch v. Commonwealth (Ky.), 290 S.W.2d 783 (1955); 21 Am.Jur.2d Criminal Law Sec. 81; 22 C.J.S. Criminal Law § 33.

"Point No. 8. The Court erred in his instructions to the jury: 'Now if I take the goods of another from his person and I carry them away, it is unimportant whether at the moment of the taking I had intent to permanently deprive; if I subsequently form that intent to permanently deprive the owner of those goods, then I am guilty of larceny. So I might take and forcibly take property from the person of another without any then present intention of robbing him, of keeping the goods, but if I subsequently form the intent to keep the goods and deprive the owner, permanently deprive him, then I am guilty of a larceny when I formed that intention and having acquired them in this fashion, but this is larceny from the person as distinguished from robbery.' "

Although no objection was taken to this part of the Court's instruction, some of defendant's requested instructions brought this issue into focus and we have examined the record including the rest of the Court's charge to ascertain whether manifest error of law occurred. State v. Peterson, 145 Me. 279, 288, 75 A.2d 368 (1950). Defendant's

contention is that the defendants, reasonably believing themselves in danger from an assault on the part of the warden, disarmed the officer lawfully in self-defense and therefore the defendant contends he originally came into possession of the gun lawfully. Without indicating any opinion as to the merits of defendant's claim factually, we conclude that the quoted language must have left the jury with the impression that even if the defendant took the officer's gun lawfully, without any present intention to deprive its owner permanently, an intention to do so formed at some later time would complete the essential elements of larceny from the person.

▋ The general rule has long been stated to be that to constitute larceny the intent to steal must exist at the time of the taking. State v. Thomes, 126 Me. 230, 137 A. 396 (1927). See also cases cited in 32 Am.Jur. Larceny, Sec. 40, 52 C.J.S. Larceny § 29. The same reasoning obtains in the crime of larceny from the person. Maine is one of the jurisdictions that has recognized as an exception to this rule the principle that if the property is taken from the owner against his will, by a trespass or fraud, a subsequently formed intent to deprive the owner permanently of his property will constitute larceny. State v. Coombs, 55 Me. 477 (1868).

▋ However, if, as the defendant here contends, possession of the gun was originally obtained lawfully as a reasonably necessary act of self-defense, a subsequently formed intent to deprive the owner permanently would not constitute larceny. Rex v. Hollaway, 5 Car. & P. (Eng.) 524 (1833), 14 Am.Crim.Rep. 387; United States v. Durkee, 1 McAll. 196, 25 Fed.Cas. page 941 No. 15,009 (1856); Bailey v. State, 92 Ark. 216, 122 S.W. 497 (1909); Wharton Criminal Law, 12th Ed., Vol. 2, Sec. 1129; 32 Am.Jur. supra.

▋ The Court's instructions to the jury on the law of self-defense fully protected defendant's rights in that respect but the omission of an explanation concerning the defendant's claim of original lawful possession, which was a question for the jury, created such a danger of prejudice as to entitle defendant to a new trial.

Appeal sustained.