**STATE of Maine**

v.

**Hugh McKEOUGH.**

Supreme Judicial Court of Maine.

Feb. 28, 1973.

---

Joseph E. Brennan, Cumberland County Atty., Donald Grey Lowry, Asst. County Atty., Portland, for plaintiff.

Carl R. Trynor, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

In the late evening of October 4, 1971, a young lady who was walking on Park Street toward York Street in Portland was attacked by a male assailant. In the ensuing struggle the assailant produced a knife and the lady suffered a chest wound and a cut finger. While she was struggling with this assailant another male individual, an accomplice, made off with her purse. Sub-

sequently, she identified the Defendant as the assailant and he was arrested a few days later upon the lady's complaint.

After a probable cause hearing in the Ninth District Court of Maine Defendant was bound over to the next term of the Cumberland County Grand Jury.

On December 14, 1971, the Grand Jury returned an indictment for robbery against the Defendant charging him with violation of 17 M.R.S.A. § 3401. A jury trial followed in the Superior Court on January 26 and 27, 1972 and Defendant was found guilty of robbery and sentenced to serve no less than five nor more than ten years in the Maine State Prison at Thomaston.

■■■ Defendant, acting through his court appointed counsel, appeals to us from the jury verdict on the ground that the Justice's charge to the jury was erroneous in several regards. Defendant's counsel had failed to object to any part of the Justice's charge to the jury or to any omissions from that charge and had made no requests for additional instructions. Therefore, by his inaction at trial, he has failed to meet a condition precedent to his right to assign complaints concerning the Justice's charge as error on appeal.[1] As we held recently in State v. Collins, Me., 297 A.2d 620 (1972) his claims of error are cognizable on appeal under M.R.Crim. P., Rule 52(b) only if the errors are "obvious" and "affecting substantial rights".[2]

Therefore, our examination of the record will be confined to a determination of whether the Justice's instruction contained seriously prejudicial errors tending to produce manifest injustice.[3]

*Absence of specific instruction as to intent to deprive permanently.*

■■■ It is well settled that an intent to deprive permanently the owner of his property is an essential element of the crime of larceny [4] and also, of course, of robbery which is larceny committed by violence or by putting in fear, although neither statute makes specific mention of any requisite intent. 17 M.R.S.A. §§ 2101 and 3401; State v. Greenlaw, 159 Me. 141, 189 A.2d 370 (1963).

■■■ It is constitutionally mandated that every element of the crime charged must be proved beyond a reasonable doubt. In Re Winship, 307 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970).

■■■ Although intent to deprive permanently is not contained in the language of the statute the omission of a reference to this element in the Justice's charge is error.

In *Greenlaw* we found that it was reversible error to deny the Defendant's request for a specific instruction as to intent to deprive permanently and that the use in the charge to the jury of such expressions

---

1. "No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection."
   M.R.Crim.P., Rule 30(b).
   We have pointed out before that counsel has a duty to call to the attention of the Court errors or omissions while it is still possible to make corrections and that this requirement is no mere formality. State v. Boisvert, Me., 236 A.2d 419, 422 (1967); State v. Smith, 140 Me. 255, 284, 37 A.2d 246, 258 (1944).

2. See also Glassman, Maine Practice, § 52.

3. In State v. Langley, Me., 242 A.2d 688, 690 (1968) we held that an objection raised for the first time on appeal comes too late and added "An exception is made only when the error complained of is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial."

4. As we noted in State v. Boisvert, supra 236 A.2d at 423, Maine is one of the jurisdictions which has recognized as an exception to the simultaneous intent rule that if the property is taken from the owner against his will, by a trespass or fraud, a *subsequently* formed intent to deprive the owner of his property will constitute larceny.

as "feloniously stolen and taken", "commit a larceny" "steal the automobile, with the intent to commit larceny" were insufficient to avoid prejudicial error on the facts present there.

In our own case the Justice used similar language in his explanation of the crime of robbery. He read the robbery statute:

"Whoever, by force and violence or by putting in fear, feloniously *steals* and takes from the person of another property that is the subject of larceny is guilty of robbery . . ." (Emphasis added.) 17 M.R.S.A. § 3401.

He explained that the State charged that the Defendant "feloniously did *steal,* take and carry away from Miss M—property which is the subject of larceny". (Emphasis added.) He then defined larceny for the jury as necessarily including the *stealing* of the property of another. The Justice then went on to explain to the jury that the property must have been taken from the person of the other, that it must have been property which is the subject of larceny, and that it was taken by force and violence or by intimidation.

The Defendant—like the Defendant in *Greenlaw*—would have been entitled to a specific instruction on intent to deprive permanently if he had requested it, but no such request was made. When asked by the Presiding Justice, following the charge, if he had any requested instructions, Defendant's counsel replied that he had none.

The Justice's omission to instruct as to intent to deprive permanently was error but our concern now is to determine whether *manifest* error exists. Did the Defendant suffer serious prejudice as a result of the omission?

A comparison between the facts in *Greenlaw* and those in the case now before us reveals significantly different fact situations.

In *Greenlaw,* the two intoxicated Defendants interrupted a ride in a taxi by seizing the driver and telling him that they were armed. They demanded his money. One of the Defendants tried to force his way in behind the wheel from the driver's side, saying he was taking the taxi, and pushed the driver into the middle of the seat. The driver broke loose from the Defendants and escaped from the cab while an onlooker began shouting. The Defendants drove away in the cab and within an hour were found a half mile away asleep in the snow not far from the parked and empty taxi. They were charged with robbery of the taxi. The taxi was yellow with red fenders. On each side in 3″ letters were the words "Central Cab Company".

In *Greenlaw*, at the close of the Presiding Justice's charge to the jury, Defendants' counsel requested a specific instruction that if the jury found that Defendants' intent was only to make a temporary use of the taxi they must find Defendants not guilty of robbery. The Justice denied this request.

It is obvious that a most vital issue in *Greenlaw* was whether the intoxicated Defendants really intended to deprive permanently the owner of the conspicuous and easily recognized taxi or whether this was in fact only a drunken escape from the scene of unsuccessful criminal activity.

The Court said:

"While in technical and juristic terms the Justice presiding academically and formally told of felonious stealing and larceny, as such, we are constrained to conclude that the instructions in their totality generate an irresoluble doubt as to the adequacy of the jury understanding of the law applicable to the fact of taking, *here.* The instruction requested by the respondents would have afforded an elucidation which *under the circumstances* must be deemed to have been necessitous and probably would have supplied definitive enlightenment unpossessed by the jury. There was prejudicial error and the exception must be sus-

tained." (Emphasis added.) State v. Greenlaw, supra, 159 Me. at 149, 189 A.2d at 374.

It is clear from a reading of *Greenlaw* that under the particular circumstances of that case, nothing but a specific explanation of the meaning of intent to deprive permanently would have enabled the jury to evaluate the facts pertaining to that issue. The omission of a specific instruction on intent to deprive permanently was highly prejudicial in *Greenlaw* where serious fact problems concerning that element were present.

Such is not the case here. As the victim walked down the street at about 11:00 P. M. the Defendant and another young man who were sitting on a wall adjoining the sidewalk accosted her and asked her to tell them the time. She looked at her watch and responded to their inquiry. As she walked along she heard a person running behind her and in a moment the Defendant seized her around the neck. She turned and struggled with him, crying out for help, and during the struggle he stabbed her in the chest and she was cut on the finger when she tried to seize the Defendant's knife. During her struggle with the Defendant the other young man seized her purse. The two young men ran away with the purse and she never saw it again.

The Defendant denied any participation in the robbery and testified that he was alone in his home at the time the incident occurred.

We find that the strong disinclination which the courts have demonstrated toward setting aside convictions for trial errors which were not prejudicial to the Defendant extends to include failures to instruct specifically as to essential elements of crimes. Such failures to instruct have been measured by the same standards we ourselves have used when examining for manifest error—the presence or absence of serious prejudice.

In Claybrooks v. State, 50 Wis.2d 79, 183 N.W.2d 139 (1971) the Defendant was convicted of the statutory offense of armed robbery which included the necessary elements that the robber was 1) armed with a dangerous weapon and 2) that he attempted to conceal his identity. The Presiding Justice failed to instruct the jury as to these two elements of the crime and counsel for the Defendant declined the Court's invitation to submit a request for further instructions and made no objection to the instructions given. The Court on appeal recognized that even though no objections were made or requests submitted, the Court must take note of errors which are so fundamental as to deny the Defendant a fair trial. The Wisconsin Court concluded that although these two unexplained elements were essential, the evidence clearly established that the robbers were armed and that the Defendant attempted to conceal his identity. The Court said:

"We conclude that in the instant case the trial court committed error in failing to instruct on the essential elements of the crime to wit: that defendant was armed and that he attempted to conceal his identity. However, it is clear from the uncontroverted evidence that this was harmless error. On the record it cannot reasonably be said that had such error not been committed, the verdict might probably have been different. 'Upon the record it appears that the conclusion reached by the jury was well-nigh imperative.' In light of the entire record, we are satisfied that justice has not miscarried." Claybrooks v. State, supra, 50 Wis.2d at 86, 183 N.W.2d at 143.

In Thomas v. State, Alaska, 391 P.2d 18 (1964) the Defendant and two other men, acting in concert, entered a liquor store where one of them (not the Defendant) threatened the clerk with a knife and forced her to hand him the contents of the cash register which he put into a paper

sack. The three then drove away in a car dividing the loot as they rode along.

The Presiding Justice instructed the jury:

"If you find from the evidence and beyond a reasonable doubt that on or about the 17th day of July, 1962, at or near Anchorage, the defendant Donald Thomas, also known as L. C. Thomas, did wilfully, unlawfully and feloniously aid and abet Harold Harvey to take and steal from the person or from the immediate presence of Nadine Jean Bisig any United States money, by putting her in fear, then you should find the defendant guilty. If you do not so find or you have a reasonable doubt thereof you should acquit the defendant." Thomas v. State, supra at 24, 25.

Only after he had completed his charge the Justice was orally requested to give further instruction as to the meaning of "steal". The Justice denied the request.

The Court on appeal said:

"Under the circumstances of this case we think that the trial court was correct in his ruling that instruction No. 10 fulfilled the requirements of Crim.R. 30(b) that '[t]he court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict. . . .'

.     .     .     .     .          .

This evidence clearly established the larceny elements of the case and nothing was developed in the case to negate those elements, namely, the taking of money with the intent to permanently deprive the owner thereof. Since the evidence was conclusive that the money was stolen, we find no such prejudicial error in instruction No. 10 as would require a reversal in this case." Thomas v. State, supra at 25.

The Court of Appeals of Georgia examined the record of a conviction for robbery in which one man had held a cocked revolver against the victim's ribs while another man searched his pockets and took his money from him. The Defendant had relied upon an alibi. The Presiding Justice had charged in the terms of the robbery statute which did not contain language regarding intent to deprive permanently. The Court found that although the instruction was not a sufficient definition of the offense, the failure to instruct completely was not reversible error under the circumstances of the case. Thomas v. State, 54 Ga.App. 747, 189 S.E. 68 (1936).

▮ The State urges us that a correct statement of the applicable law is found in the text of 77 C.J.S. Robbery § 49 at 514–515:

"Ordinarily the court should charge the jury in some form that the taking must have been with intent to steal, although where the defense was an alibi and the evidence developed no issue or contention that the taking was under a bona fide claim of right or was without any intent to steal, the instructions may be upheld notwithstanding a failure to charge in specific terms with respect to an intent to steal. If the testimony leaves uncertain the intent with which accused took the property, the jury should be instructed to give him the benefit of the doubt."

However, in the light of the demands of *Winship* and our own decision in *Greenlaw,* we hold to the view that the failure to instruct on specific intent is error, but whether it is manifest and reversible error or not depends upon the presence or absence of serious prejudice.

To return to our own situation, we believe that while the Justice's charge on robbery lacked a specific explanation of the necessity of an intent to deprive permanently, its language was sufficient to enable the jury to examine a situation where assailants attack the victim, stab her with a knife, seize her purse, run away with it and never return it or attempt to

justify its taking and to evaluate it as an intentional unlawful trespassory taking accomplished by violence for the purpose of getting whatever money the purse might contain.

The defense was satisfied to submit the issue of guilt or innocence upon the explanations given by the Justice—until after the jury had returned a verdict of guilty.

While the jurors were not informed specifically that they must find that Defendant had a larcenous intent, we see no reasonable possibility that a complete instruction on intent to deprive permanently would have resulted in a different verdict. We are satisfied beyond a reasonable doubt that the omission in the Justice's charge was harmless error here.

*Instruction on reasonable doubt.*

The Court instructed the jury on reasonable doubt as follows:

"What is a reasonable doubt? A reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence. It is rarely possible to prove anything to an absolute certainty. *Proof beyond a reasonable doubt is such as you would be willing to act upon in the most important of your own affairs.* That is a reasonable doubt, a doubt for which you can give a reason, and it goes right down to using good common sense. *Proof beyond a reasonable doubt is a doubt such as you would be willing to rely upon in the most important of your own affairs.*

I have repeated that and I think that is probably the best definition of what a doubt is. It is not a doubt you go searching for or looking for. This is not Perry Mason. Perhaps some of you have seen defendants stand right up and say 'I did it', or 'I didn't do it'. Forget about that, that is for entertainment purposes, that doesn't occur. At least from my experiences in the law I have yet to see anyone get up from the back of the Courtroom and say "I'm guilty and the defendant is not.' Forget that. This is a very very serious crime." (Emphasis ours.)

■ The Defendant's counsel objects to the first emphasized language in the above quoted instruction on reasonable doubt for these reasons, set forth in his brief:

"The standards of conduct by which juries are to measure the actions of a defendant in a given criminal case must be established with objective certainty by the Court if such criminal defendant is to be afforded his rights to due process and equal protection . . . [W]hen the Court instructed the jury that reasonable doubt should be judged according to the way that an individual juror would act in their own affairs, the Court may very well have submitted the question of doubt to the jurors under twelve separate criteria, none of which was identical with the required standard of the ordinary prudent person."

We will examine the Justice's entire instruction [5] as to reasonable doubt to determine whether the use of the language complained of constitutes manifest error.

■ There is no standard definition of "reasonable doubt" that must be used in Maine nor any particular formula that must be followed. We have sanctioned numerous statements which attempt to explain the meaning of this phrase.[6] In State v. Rounds, 76 Me. 123 (1884) this

---

5. As we pointed out in State v. Small, Me., 267 A.2d 912, 917 (1970) "[t]he correctness of a charge is not to be determined from mere isolated statements extracted from it, without reference to their connection with what precedes, as well as that which follows"

6. See e. g. State v. Poulin, Me., 277 A.2d 493, 496 (1971); State v. Levesque, 146 Me. 351, 357, 81 A.2d 665, 668 (1951); State v. Merry, 136 Me. 243, 262, 8 A. 2d 143, 153 (1939); State v. Rounds, 76 Me. 123, 125–126 (1884).

Court considered a defendant's objection to the use of language similar to that objected to here. That language was:

" . . . the law only requires that degree of certainty in the minds of jurors, before rendering a verdict of guilty, as would exist in their minds in coming to a conclusion on matters of grave interest and importance to themselves."

While the Court noted that all men do not necessarily give their own affairs the same consideration that jurymen should give to the interests of others—a fact of life which it said would make this language standing alone an inadequate and unsatisfactory definition—the Court found no objection to its use in conjunction with the explanation that "a reasonable doubt is a doubt arising in the mind for which some fair, just reason can be given".

In State v. Poulin, Me., 277 A.2d 493, 496–497 (1971) specific objection was made to that portion of the Justice's charge which attempted to define reasonable doubt by outlining the steps a juror would take in deciding upon a course of action in matters of personal importance. This Court found no error in the charge especially when viewed as a whole.

In a series of United States Supreme Court cases extending in time from 1880 to 1954 which considered various alleged errors arising in describing reasonable doubt in terms of influencing actions in private affairs, in no case, although the opportunity was present in each, did the Supreme Court take issue with measuring the standard in terms of each juror instead of in terms of the theoretical ordinary prudent person.[7]

▪ Petitioner's objection that the standard for the jury's evaluation of the evidence should have been that of the theoretical ordinary prudent person rather than that of twelve individual jurors each acting reasonably cannot be supported. We recognized long ago the impracticality and undesirability of attempting to force the jurors to standardize their own reasoning processes with the reasoning processes of a hypothetical ordinary reasonable person. We said in State v. Reed, 62 Me. 129, 143 (1874):

"There is no exact mathematical test by which we may certainly know whether a doubt, entertained in any given case, is reasonable or otherwise. What would be reasonable to one person might be far otherwise to another. Therefore, no certain line, as upon a plan, can be drawn, that shall be recognized by every one, as the dividing line between the mere skeptical doubt and that which has the sanction of reason. Hence, whatever explanations may be given to the phrase, its meaning practically must depend very largely upon the character of the mind of the person acting. Lexicographers tell us that reasonable is that which is 'agreeable or conformable to reason.' The doubt, therefore, which conforms to the reason of the person examining, is to him a reasonable doubt. If it does not so conform, to him it is unreasonable, and will not be entertained. We must assume that the jurors are reasonable men, and as such they must be addressed. When told that, in order to convict, the proof must remove every reasonable doubt of guilt from their minds, whatever the form of words used, if any heed is given to the instruction the result must be that each individual juror will understand it and act according to the dictates of his own reason; and if, tried by that test, the doubt is reasonable, conviction must fail; otherwise it would follow."

7. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Wilson v. United States, 232 U.S. 563, 570, 34 S.Ct. 347, 350, 58 L.Ed. 728 (1913); Holt v. United States, 218 U.S. 245, 254, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Hopt v. Utah, 120 U.S. 430, 439–441, 7 S.Ct. 614, 30 L.Ed. 708 (1887); and Miles v. United States, 103 U.S. 304, 309, 26 L.Ed. 481 (1880).

We still assume that jurors are reasonable people, but, inevitably, because of their varied life experience, there will often be some variances in their evaluation of the probative value of certain evidence. The Defendant in a criminal case should not—and certainly can not—complain if twelve individuals, each acting reasonably, must each find no reasonable doubt as to his guilt if he is to be found guilty.[8] We find no merit in Defendant's claim of error.

Although the Defendant's point of error relates only to the first underlined sentence of the Justice's charge, the second underlined sentence also requires comment. When the Justice said

"Proof beyond a reasonable doubt is a *doubt* . . ." (Emphasis added.)

he evidently meant to say

"Proof beyond a reasonable doubt is *proof* . . ."

While the sentence as given could not have been of any assistance to the jury, we see no possibility that this misuse of words could have misled the jury. We mention this to remind the Justices that if the illustration is to be of any assistance to the jury the word association must be correct. It should refer to the *proof* which would cause the jurors to *act* in matters of the greatest importance relating to their own affairs—or to the *doubt* which would cause them to *hesitate* to act.

Such was the conclusion of the United States Supreme Court in Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167 (1954). The jury had been instructed that a reasonable doubt was

"the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon."

The Court thought that that section of the charge should have been in terms of the kind of doubt that would make a person *hesitate* to act, but found that the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some.

We cannot find manifest error in the language used by the Justice, especially viewed in connection with the remainder of his instruction as to reasonable doubt and with the failure of Defendant to make timely objection.

Several other complaints are made by Defendant, none of them preserved by objection, which have no merit and must be rejected without detailed discussion.

The entry will be:

Appeal denied.

POMEROY, J., did not sit.

All Justices concurring.

---

8. For almost 100 years our Court has approved of the use of the following language:
   " . . . 'It is a doubt which a reasonable man of sound judgment, without bias, prejudice, or interest, after calmly, conscientiously and deliberately weighing all the testimony, would entertain as to the guilt of the prisoner.' . . ." State v. Reed, supra at 144.