**STATE of Maine**

**v.**

**Francis SCOTT.**

Supreme Judicial Court of Maine.

July 31, 1975.

Foahd J. Saliem, Pat J. Perrino, Jr., Asst. Attys. Gen., Augusta, for plaintiff.

Levine, Brody & Levine by Morton A. Brody, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

Appellant was indicted for "murder" by the Kennebec County Grand Jury. He entered a plea of "not guilty" and "not guilty by reason of mental disease or mental defect." From a judgment entered in a jury

verdict of "guilty of manslaughter," he takes this timely appeal.

We deny the appeal.

The facts may be summarized briefly. Appellant's wife had entered into a romantic relationship with the deceased, Arnal Bray.

Following the filing of his wife's divorce action, appellant moved out of the couple's apartment and went to stay with Bray's wife.

In the weeks prior to May 22, 1973, the evening of Bray's death, appellant became increasingly disturbed by the intimacy between Bray and his (appellant's) wife. Appellant frequently visited with his wife's sisters, and on occasion returned to see his wife and their children. On several of these visits he indicated that he intended to kill Bray with a gun.

On the night of May 22, 1973, Scott's wife, her three children, and Arnal Bray returned from a concert to find Scott sitting in the living room of the apartment. A discussion ensued concerning the possibility of reconciliation.

As the evening progressed, Bray suggested that Scott leave, and both couples meet the next day to discuss the romantic entanglement involving them all. Appellant insisted he would stay until he received an answer from his wife, whereupon Bray urged him "not to do anything foolish."

Climaxing this exchange, Scott pulled a gun from under his jacket and shot Bray in the chest. As Bray raised his hands and implored Scott not to shoot again, the latter rose from his chair, approached the couch on which Bray sat, and shot him in the face. The medical examiner testified that Bray succumbed to a massive chest wound, which he described as "a wound completely incompatible with life."

Appellant raises two issues on appeal.

He first contends the instruction to the jury as to the burden of proving that defendant suffered from a mental disease or defect at the time of the alleged offense, was so confusing as to amount to a failure to charge on this crucial point.

█ The objection is raised for the first time on appeal, the appellant having failed to object seasonably to the charge as given, or to request further instructions, in compliance with Rule 30(b) M.R.Crim.P. That being so, our review of the record may be limited to a determination of whether the charge "contained seriously prejudicial errors tending to produce manifest injustice." *State v. Brown*, Me., 302 A.2d 322, 324 (1973); *State v. McKeough*, Me., 300 A.2d 755 (1973).

█ The trial Justice instructed the jury as follows:

"In deciding, if you get to that point, whether this defendant at the time of the alleged acts, if you find that he did beyond a reasonable doubt commit those acts, was or was not suffering from mental disease or defect, the standard you will follow, then, is the preponderance of the evidence and is not beyond a reasonable doubt. In other words, in approaching this problem, if you find it more likely so than not so, if you find this scale tipped ever so slightly either one way or the other, then that would be sufficient as to the preponderance of proof not guilty by reason of mental disease or defect."

We consider this charge to be a complete and accurate explanation of the quantum of proof necessary to establish that the "unlawful act was the product of mental disease or mental defect." 15 M.R.S.A. § 102.

In *State v. Durgin*, Me., 311 A.2d 266 (1973), we said the rule is that

". . . if the jury is satisfied *by a fair preponderance of the evidence* that but for a mental disease or mental defect which substantially affected his mental or emotional processes and which sub-

stantially impaired his behavior controls, the accused would not have committed the acts complained of, he is not criminally responsible." (Emphasis supplied)

Earlier in his instructions the trial Justice correctly distinguished for the jurors between the "preponderance of the evidence" standard and the "reasonable doubt" standard.

▪ We have consistently held that the propriety of the charge must be determined from its entirety and not from isolated extracts. *State v. Devoe*, Me., 301 A.2d 541 (1973); *State v. McKeough, supra.*

A fair reading of the charge in its entirety convinces us that it was a careful and precise instruction which very clearly informed the jury as to the nature and extent of the burden which must be met before it could find that the appellant should be excused from any legal responsibility[1] for the death of Arnal Bray.

▪ Appellant's second contention is similarly without merit. He urges that the jury was unwarranted in concluding the unlawful act was *not* the product of mental disease or mental defect. Specifically, it is his contention that there was no conflict between the experts on the question of appellant's mental state at the time of the shooting. He says all the expert testimony militated in favor of a finding which would excuse him from criminal responsibility.

At trial, appellant called Dr. John Bishop, a clinical psychologist, who testified at length concerning his examination of appellant at the State Prison in August, 1973.

It was his opinion that at the time of the shooting Scott was suffering from a mental disease which he diagnosed as "hysterical neurosis, dissociative type."

In response to the question whether appellant's ability to control his behavior at the time of the shooting was actually impaired, Dr. Bishop stated that appellant's behavior "was completely involuntary and not under conscious control at that time."

The State's expert witness, a psychiatrist who had examined appellant on June 26, 1973, characterized the appellant as an "hysterical personality." At the time of the shooting, in his opinion, the appellant was in a "dissociative state," that is, "a temporary period of dissolution of ego defenses that make it difficult for the individual to interpret reality." In such a state, the Doctor explained, the appellant did not have full conscious control of his behavior. This transient dissociation notwithstanding, the Doctor emphasized appellant was not at that time suffering from any mental disease or defect.

We are satisfied from the record that there was a clear conflict in the opinions expressed by the two doctors who testified on this critical issue.

▪ Whether or not there was legal responsibility for the unlawful conduct was a *question of fact* which the jury was obligated to determine from all the evidence in the case. *State v. Durgin, supra; State v. Hathaway*, 161 Me. 255, 211 A.2d 558 (1965).

The entry must be,

Appeal denied.

All Justices concurring.

---

1. We note the trial Justice failed to inform the jury whether the burden was on the State to disprove that the unlawful conduct was the product of a mental disease, or on the appellant to prove the same. Our examination of the charge as a whole reveals that in every other instance where the trial Justice had occasion to discuss the burden of proof, the burden was expressly assigned to the State. We are convinced that in the absence of an explicit instruction as to where the burden of proving that appellant was not legally responsible, for his conduct lay, the jury could have assumed that the *State* was obligated to establish that appellant was not suffering from a mental disease. If that be so, the appellant cannot now be heard to complain.

The instruction given may have been more favorable to the appellant than that to which he was entitled.