STATE of Maine

v.

Thomas MORTON.

Supreme Judicial Court of Maine.

May 1, 1972.

Foahd J. Saliem, County Atty., Augusta, for plaintiff.

Charles E. Moreshead, Augusta, for defendant.

Before DUFRESNE, C. J., and WEB-BER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Defendant, in a trial by jury (in the Superior Court, Kennebec County), was found guilty of the crime of uttering and publishing as true, and with intent to defraud, an endorsement of a bank check which defendant knew to be a false, forged and counterfeit endorsement (17 M.R.S.A. § 1501). After a sentence of two and one-half to seven years in the State Prison was imposed, judgment of conviction was duly entered. Defendant has appealed to this Court from the judgment of conviction.

The evidence discloses that defendant was identified at trial as the person who had participated in a transaction involving a purported purchase of a used automobile. Defendant had produced from within his own possession the bank check above mentioned in which the name "Kenneth Hustus" appeared as the designation of the payee of the check. In the presence of the seller, defendant signed the name "Kenneth Hustus" as an endorsement on the check and then delivered the check to the seller in part payment of the purchase price of the used automobile.

Defendant's first ground of appeal claims legal insufficiency of the evidence by which defendant was identified as the person who had committed the crime.[1]

In the manner in which the claim has herein been developed for appellate review, it must be denied.

At the conclusion of the evidence presented by the State, defendant, pursuant to Rule 29(a) M.R.Crim.P., had made a motion for judgment of acquittal by which he had raised the issue of the legal insufficiency of the identification evidence adduced by the State. The presiding Justice denied the motion. Defendant did not rest but thereupon proceeded with his own case and offered evidence which, in part, undertook to show that defendant had been elsewhere at the time and was, therefore, wrongly identified as a participant in the used car transaction.

Defendant failed to make a motion for judgment of acquittal at the close of all the evidence or subsequently to the jury's return of a verdict of guilty (either before or after the discharge of the jury) —all as authorized under Rule 29 M.R. Crim.P. Furthermore, there was no motion for a new trial under Rule 33 M.R.Crim.P. which would be "deemed", under Rule 29 (b) M.R.Crim.P., "to include a motion for judgment of acquittal as an alternative."

In relation to the issue of the legal adequacy of the evidence of identification defendant has assigned only a single point upon which he relies in this appeal. It reads as follows:

"The Court erred in not allowing Appellant's *Motion For Acquittal* on the grounds that proper identification was not made of the Respondent by *the State's witnesses.*" (emphasis supplied)

■ We are obliged to construe this point of appeal as a claim of error *confined* to the import of the evidence *as it existed at the close of the State's case* rather than as directing attention to the *totality of the evidence.* Since defendant had made only one motion for judgment of acquittal and it had been forthcoming at the close of the State's case, the explicit

---

1. Defendant argues that notwithstanding the unequivocal identification of defendant made at trial by the seller of the automobile, this same person had revealed considerable uncertainty as to the identification of the defendant when he had confronted the defendant before trial for the precise purpose of making an identification. Defendant maintains that such prior doubt in the seller's mind suffices to render the identification made at trial incapable of rising to the level of proof of identity beyond a reasonable doubt.

reference to "Appellant's Motion for Acquittal" must be interpreted to signify such error by the trial Court as inhered in the decision of *that* motion which functioned *only* to contest the sufficiency of the evidence offered *by the State's case in chief*. This view is further confirmed by defendant's express mention in the designated point of appeal of the insufficiency of the identification evidence which had come from the *"State's witnesses"*.

■ It is elementary that the issue raised by a motion for judgment of acquittal which is made at the close of the State's case in chief—precisely because it involves assessment *only* of the evidentiary situation *then existing* rather than of the *totality* of the evidence—is waived once the defendant goes forward with his own case and presents evidence. State v. Shortwell, 126 Me. 484, 139 A. 677 (1928); State v. Johnson, 145 Me. 30, 71 A.2d 316 (1950); State v. Rainey, 149 Me. 92, 99 A.2d 78 (1953); and State v. Lizotte, Me., 256 A.2d 439 (1969).

■ In the present situation, therefore, since the one designated point of appeal which relates to an alleged insufficiency in the evidence specifies alleged error by the presiding Justice only in the evaluation of the legal adequacy of the evidence as it existed at the close of the State's case, and since defendant had waived the right to make such claim of error by choosing to introduce evidence at the trial in his own behalf, this ground of appeal must be denied.[2]

A second point raised on appeal concerns alleged error in the refusal of the presiding Justice to give the following requested instructions:

"1. No class of testimony is more uncertain and less to be relied upon than that of identity.

"2. Evidence of identification of the defendant in the absence of prior familiarity with him is merely the expression of an opinion by a witness and is to be regarded by the Jury in the same light as any other opinion that may be expressed by a witness.

"3. If the Jury finds that the witness was honestly mistaken in his identifica-

[2]. The record before us has included the entire transcript of the testimony. We can note, therefore, without deciding, that had defendant raised for appellate review the legal insufficiency of the *totality* of the evidence as to identity, we should have considered the evidence adequate to leave the issue for determination by the jury.

At this juncture, another point must be emphasized. Our decision of the present issue is neither a holding nor suggestion of opinion as to the fundamentally different question which would have been presented to us had defendant specified his point of appeal to be the legal insufficiency of the *totality of the evidence presented by both the State and the defendant*. Although defendant had omitted to move for judgment of acquittal either at the close of all the evidence, or after verdict, or after discharge of the jury, and had not filed any motion for new trial which would be "deemed" to raise the issue of judgment of acquittal as an alternative, a strong argument can be made that the failure of the totality of the evidence to meet legal criteria of adequacy to support a conviction is an issue which is never "waived" by omissions of the defendant at the trial level. In this connection, observe the explicit statement in Rule 29(a) M.R.Crim.P. that: "The [trial] court . . . *of its own motion shall* order the entry of judgment of acquittal . . . if the evidence is insufficient to sustain a conviction . . . ." (emphasis supplied) This language, together with the constitutional mandate of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970), could be regarded as cogent support for a position that the issue should be open as claimed error at the appellate level if (1) the issue has been raised in the appellate tribunal by a proper and adequate designation in the points of appeal, and (2) the appellate tribunal has before it a record sufficient to allow the question to be decided—without need to invoke the doctrine of manifest injustice or denial of a fair trial. Cf. Wright, Federal Practice and Procedure: Criminal, § 469. But see: State v. Rowe, Me., 238 A. 2d 217 (1968).

tion of the Defendant, then a reasonable doubt is created as to the guilt of the Defendant and he must be acquitted."

■ The presiding Justice declined to give the requested instructions on the ground that in his charge he had already sufficiently covered the subject-matter in his own words.

Our reading of the charge of the presiding Justice confirms his view, especially with regard to requested instructions (1) and (3) above.

■ As to requested instruction (2) it may be that the presiding Justice did not use language tending directly to connote the concept of "opinion" evidence. The requested instruction, however, is itself unclear and incomplete in that it fails to explain the meaning of "opinion" evidence in contradistinction to other kinds of testimony and provides no criterion for a different assessment by the jury of "opinion" testimony as contrasted with "non-opinion" testimony. Because of such inaccuracy and incompleteness in the request itself, the presiding Justice was without obligation to give it in the form in which defendant had presented it. In any event, however, we find that the substance of what defendant could legitimately have been requesting was adequately stated to the jury by the presiding Justice's own language.[3]

■ Defendant's third and last point of appeal consists of a contention that one instruction in the charge was so prejudicial as to deprive defendant of a fair trial. On this basis, even though defendant had omitted to make timely objection at trial to preserve the issue for review by appeal in accordance with sound trial and appellate practice, the instruction remains subject to appellate scrutiny under the doctrine of State v. Smith, 140 Me. 255, 37 A.2d 246 (1944); State v. Wright, 128 Me. 404, 148 A. 141 (1929); and Rule 52(b) M.R.Crim. P.

The instruction was:

"[W]e are not really here to determine or decide . . . and if the truth be known, we really aren't interested in whether this defendant is guilty of this offense or not. Now, that seems somewhat of a callous statement, and shocks a great number of people when I say it, but really, the main reason we are here is to determine whether or not the State has proven that this defendant is guilty of this offense."

This statement of the presiding Justice, standing alone, could be misleading to lay people. By itself, it might be properly considered inadequate to cover the underlying concept which the presiding Justice was seeking to clarify and emphasize—the point that in our system criminal punishment will not be imposed until a person in

3. The presiding Justice had told the jury: ". . . you have to scrutinize the individual who is telling you what he saw, and who it was that he saw. You must examine the period of time that he had an opportunity to observe this defendant, if in fact he did observe the defendant. These are all facts for the jury to determine.
"Was his testimony of identification correct? Was it truthful? Was in accurate? How well was he able to recall in his memory the details of what it was that he saw there that evening, and how vividly was there impressed upon his mind a description, an identification? These are all facts for the jury. This is why you are here.

"You have all seen people, you have all dealt with people, you have all been in a position where you have to recollect the identity of some person that you have seen at some time before, and have you been unable to identify the person because you only saw him for a minute or two, or can you identify him or her because of the circumstances under which you saw him or her, the period of time that it happened prior to that—all of these factors, . . . common sense, the soundness of your experience and intelligence, . . . [come] into play in determining the truth, . . . ."

fact guilty has *also* been *proved* guilty in accordance with prescribed legal procedures and standards.

We conclude, however, that placed in its actual context in the charge of the presiding Justice, the remark under consideration functioned as a part of the totality of the instructions to provide a sufficient and correct delineation of the law.

Preceding the excerpt which defendant has extracted for isolated consideration, the presiding Justice had told the jury:

"We don't guess, we don't speculate, we don't make assumptions. We are here basically for the purpose of determining whether or not the guilt of this defendant has been proven, . . .."

Subsequently to the allegedly prejudicial statement, the presiding Justice further emphasized:

"Now, I hope you see the difference. [T]hose who had the judgment and the wisdom to formulate our system were more concerned with whether or not there was evidence or proof of guilt, and felt that we would be accomplishing a system of justice . . . if we limited ourselves to a determination of proof."

\* \* \* \* \* \*

"[W]e present evidence, and we go through the ritual of a trial, and really, what we are mainly concerned with, and wholly concerned with, is not whether or not this defendant is *guilty of this offense* . . ., but whether or not the State has proven his guilt. And I think if juries can understand the subtle difference between whether a person is guilty or not guilty of a crime, and whether or not the State has proven that person guilty of a crime, you will have gone very far in understanding basically what our system is all about."

Finally, near the end of his charge, the presiding Justice again stressed:

"But we are here, as I have said, and said at the outset, not for passing judg-ment on Thomas Morton on the abstract issue of his guilt or innocence, we are here wholly, completely, to pass judgment as to whether or not you are satisfied that the State has proven the guilt of this defendant beyond a reasonable doubt."

The portion of the charge selected by the defendant for complaint, when considered in the totality of the context in which the presiding Justice had given it to the jury, as above amplified, was not an erroneous statement of the law. Surely, therefore, it cannot be held to have deprived defendant of a fair trial.

The entry is:

Appeal denied.

All Justices concurring.