**STATE of Maine**

v.

**Ralph J. PALUMBO.**

Supreme Judicial Court of Maine.

Nov. 1, 1974.

Roland A. Cole, County Atty., Alfred, Edward T. Gaulin, William S. Brodrick, Asst. Attys. Gen., Alfred, for plaintiff.

James S. Kriger, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

The defendant has appealed from his conviction for the sale of methamphetamine, a violation of 22 M.R.S.A. § 2210–A.[1]

We deny the appeal.

Appellant premises his appeal on the following points:

1. Judicial abuse of discretion by the Justice presiding in refusing to grant a continuance because

    A. Counsel was given inadequate time to prepare for trial; and

    B. A material defense witness could not be present on the day assigned for trial.

2. The refusal to allow the use of samples for purpose of independent analysis.

3. It was not proved that methamphetamine is a derivative of amphetamine.

4. In instructing the jury, the Justice below erroneously defined (A) reasonable doubt, and (B) the presumption of innocence.[2]

## FACTS

Although the offense occurred on June 19, 1972, Palumbo was not indicted until January 8, 1973. He was arrested on January 10, on which date he retained counsel. Nine days later a motion for discovery was filed which included the request for samples for independent analysis. On January 22nd the use of samples was denied and trial was then set for January 29, 1973. On January 27th appellant moved for a continuance for one month because (a) counsel had not been given adequate time for preparation and (b) a chemist who had first been consulted on January 24th would not be available on the day set for trial.[3] Trial actually began on January 30th, prior to which the motion for continuance was renewed and denied.

A careful reading of the trial transcript makes it abundantly clear that the defense was predicated on an absolute denial of the sale itself. The appellant, his wife and father, all testified, in contradistinction to the evidence produced by the state, that no sale to the alleged purchaser occurred at their home or elsewhere on the day alleged, or at any other time.

### Point 1A

■ We consider first the alleged error in not granting a continuance so that counsel could be better prepared for trial. Certainly it cannot be said that the legal issue involved was complicated. The facts were routinely simple. Appellant has not demonstrated any disadvantage flowing from the denial of the motion. We note that twenty days elapsed between the initial arrest and the actual trial. A careful review of the record fails to disclose any "occur-

---

1. "It shall be unlawful for any person, firm or corporation to sell or offer to sell, any amphetamines or derivatives or compounds thereof. The persons exempt from the provisions of section 2210 shall be exempt under this section." 22 M.R.S.A. § 2210–A.

2. No objection to this portion of the instructions was made pursuant to Rule 30(b) M.R. Crim.P. Therefore, the scope of review is

limited by Rule 52(b), M.R.Crim.P., namely:

    "(b) Obvious Error. Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

3. The chemist was to be in San Francisco on the day assigned for trial.

rences at trial which would suggest that [appellant] was prejudiced or that his counsel was disadvantaged by lack of preparation." State v. Rastrom, 261 A.2d 245, 246 (Me.1970).

Appellant bears the burden of demonstrating, in this context, an abuse of judicial discretion,[4] and this Court must view the evidence presented thereon to determine whether a *clear abuse* of that discretion has been established. State v. Carll, 161 Me. 210, 210 A.2d 680 (1965). We find none.

### *Point 1B*

Was it error to refuse a continuance because the chemist whom the appellant wished to have as a witness could not be present on the day assigned for trial?

We apply the same test used in State v. Curtis, 295 A.2d 252, 255 (Me.1972), namely:

"It is elementary that a party seeking a continuance for the purpose of securing the attendance of witnesses must show:

'[W]ho they are, what their testimony will be, that it will be relevant . . . and competent, that the witnesses can probably be obtained if the continuance is granted, and that due diligence has been used to obtain their attendance for the trial as set. . . .' Neufield v. United States (1941) 73 App.D.C. 174, 118 F.2d 375, 380."

Appellant fails to meet this test since he has made no showing of either the substance of the chemist's testimony or that it would be relevant and competent in view of the issues which developed at trial. The record is clear that the prospective witness had an opportunity to consult with the state's chemist and, subsequently, with defense counsel, all of which occurred *prior* to filing the motion for a continuance.

Furthermore, we note the *absence* of any suggestion in the motion for a new trial filed February 9, 1973, and heard *eleven days* thereafter, that had this witness been present during the trial the chemical testimony offered by the state could have been questioned. There is no merit in appellant's position. State v. Curtis, *supra*; Jackson v. State, 214 Md. 454, 135 A.2d 638 (1957), cert. denied, 356 U.S. 940, 78 S.Ct. 784, 2 L.Ed.2d 816.

### *Point 2*

We have recently dealt with the problem presented when a request is made that a sample of a given substance be furnished for chemical analysis. Since the facts before us do not go beyond those in State v. Cloutier, 302 A.2d 84 (Me.1973), the result there reached is dispositive of the appellant's argument, which we must reject.

### *Point 3*

Appellant has argued that the state has failed to prove that methamphetamine is a *derivative* of amphetamine.

Webster's Seventh New Collegiate Dictionary defines *derivative* as "a chemical substance so related structurally to another substance as to be theoretically derivable from it," or "a substance that can be made from another substance in one or more steps."

It is true that the state's chemist did not testify specifically that "methamphetamine is a derivative of amphetamine" but his testimony left no room for doubt that such was the fact.

Initially, he was given a packet containing a powder allegedly purchased from the appellant. By three preliminary tests he determined that this powder was "an amphetamine." He then subjected this same substance to three more refined tests[5] and gave as his conclusion that "the powder in

---

4. State v. Hume, 146 Me. 129, 78 A.2d 496 (1951).

5. Infrared, thin layer chromatography and gastromatograph tests.

the little packet I received contained methamphetamine. It is commonly referred to as speed."

By this process the state proved the structurally derivative relationship of methamphetamine to amphetamine beyond any doubt and, if the chemist had affirmatively testified "methamphetamine is a derivative of amphetamine," the testimony would have been merely cumulative. The appellant takes nothing from this argument.

### Point 4A

We now deal with the appellant's challenge to the instructions relative to "reasonable doubt."

At the conclusion of the charge to the jury, counsel for appellant stated: "Your Honor, I wish to have the instruction as given in State v. Merry, 136 Me. 243,[6] [8 A.2d 143] on reasonable doubt." The Justice below refused this request, observing: "I think I have given the equivalence of it." This point has thus been saved for appellate review. Rule 30(b), M.R.Crim.P.

■■■ We apply the standard test that the adequacy of a charge is measured, not by isolated extracts, but by the charge as a whole,[7] and that a specific instruction need not be given in the exact language requested provided the substance thereof is adequately covered otherwise.[8]

■ The Justice below used this language:

"The term 'reasonable doubt' almost defines itself: It is not a mere possible doubt, it is not a mere conjecture nor an unreasonable doubt, nor a whimsical doubt, it is a doubt arising in the mind for which some fair, just reason can be given. It is such an actual substantial and well-founded doubt as would be entertained by a reasonable and conscientious man. Such a doubt that the reason for it can be examined and discussed. It is a doubt which a reasonable man of sound judgment without bias, prejudice or interest after calmly, conscientiously and deliberately weighing all of the testimony would entertain as to the guilt of the accused. It is not enough to establish merely a probability of guilt, the rule requires that the guilt shall be established to a reasonable but not an absolute demonstrative or mathematical certainty. When all is said and done however, the phrase 'reasonable doubt' defines itself. It must be a doubt and also a doubt that is reasonable.

Unless the State satisfies you of the truth of every fact essential to the guilt of the accused, that is of every fact necessary to the commission of the crime with which he is charged, including the fact that he committed the crime by evidence which convinces you beyond a reasonable doubt, then the State has failed to sustain the burden which is upon it and your verdict must be not guilty . . . ."

The charge as given contained no error, nor did it omit any essential. We have recently held that in Maine there is no standard definition of "reasonable doubt," nor is there "any particular formula that must be followed." State v. McKeough, 300 A.2d 755, 761 (Me.1973). The instruction as given is consistent with past definitions of

---

6. "In a criminal prosecution, the law casts upon the State the burden to prove the guilt of the accused, not by a mere preponderance of the evidence, but beyond a reasonable doubt.

"As the term is used in instructing juries in criminal cases, a reasonable doubt is not a vague, fanciful or speculative doubt, but a doubt arising out of the case as presented, for which some good reason may be given, and

such a doubt as, in the graver transactions of life, would cause reasonable, fair-minded, honest and impartial men to hesitate and pause . . . ." State v. Merry, 136 Me. 243, 262, 8 A.2d 143, 153 (Me.1939).

7. State v. Jewell, 285 A.2d 847 (Me.1972); State v. Hudson, 325 A.2d 56 (Me. Opinion dated September 6, 1974).

8. State v. Morton, 290 A.2d 371 (Me.1972).

this traditional concept. *See* State v. McKeough, 300 A.2d at 761 n. 6.

### Point 4B

Although no objection was recorded following the charge to the jury, appellant now contends the Justice below committed obvious error affecting the appellant's substantial rights (Rule 52(b), M.R.Crim.P.) when he gave the following instruction:

"The accused on trial starts with an absolutely clean slate and this, as you remember I said at the beginning, this is a Nisi Prius Court, a Court of first impression. And so you as Jurors are writing on a clean slate, and the person accused of crime comes to Court with what we call the presumption of innocence, which teaches, among other things, an attitude of rational skepticism on your part,—why should I believe this, why should I believe this."

■ Appellant argues that the quoted instruction is deficient (1) because a "juror could believe that this presumption only lasts until the trial begins" and (2) the use of the expression "rational skepticism" is confusing. He cites State v. Pratt, 309 A.2d 864 (Me.1973), and State v. McKeough, *supra,* neither of which supports his argument. In *Pratt* we said an instruction erroneously defining the crime of sodomy could not be held harmless because, had a proper instruction been given, the jury, rationally, could have concluded that no crime had been committed. In *McKeough,* we held that arguably inappropriate language did not constitute manifest error, especially when viewed in conjunction with the remainder of the instructions, which were accurate.

We have read the instructions in their entirety. The jury was reminded on several occasions that the burden of proving guilt (beyond a reasonable doubt) initially was on the state, that it bore this burden as to each essential element of the crime, and it remained on the state "throughout the entire proceeding."

While the jury was told that the "presumption of innocence may be overcome by proof of fact[s] which satisfies you beyond a reasonable doubt of the guilt of the accused," they were also instructed:

"It is your duty to protect the individual from unproven charges. And if the State fails to satisfy you of his guilt beyond a reasonable doubt it is not only your function but your positive duty to find the accused not guilty."

*Assuming* (without necessarily deciding) that the instruction was overly terse and failed to elaborate on all the refinements of the concept of the "presumption of innocence" in traditional terms, as we recently said in State v. Davenport,[9]

"our evaluation of the instructions as a whole leads us to conclude that there was no error, let alone error sufficient to affect prejudicially the substantial rights of the accused under Rule 52(b)."

The entry is

Appeal denied.

All Justices concurring.

WERNICK, J., sat at argument but did not participate further in the opinion.

9. 326 A.2d 1, 11 (Me. Opinion dated October 4, 1974).