STATE of Maine

v.

**Charles HEALD and Thomas Morton.**

Supreme Judicial Court of Maine.

Jan. 19, 1977.

Charles K. Leadbetter, Vernon Arey, John R. Atwood, Asst. Attys. Gen., Augusta, for plaintiff.

Paine, Lynch & Weatherbee by Errol K. Paine, Bangor, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The defendants were indicted, tried before a jury and convicted of conspiracy to commit robbery in violation of 17 M.R.S.A. § 951, and have appealed. Both defendants premise their appeals on the ground that the presiding Justice committed error (1) by improperly instructing the jury on the meaning of proof beyond a reasonable doubt and (2) in denying their motions for judgment of acquittal and for a new trial.

We deny both appeals.

### THE REASONABLE DOUBT INSTRUCTION

During his instructions to the jury the presiding Justice devoted a considerable amount of time to the burden, carried by the State, to establish the commission of a crime by proof beyond a reasonable doubt. In attempting to assist the jury in under-

standing that concept, the Justice below gave the following illustration:

"Let's assume for a moment that you *knew* that the electricity in this building went off at five o'clock this morning and remained off for an hour, and you also *knew* that this clock was the type of clock that when the electricity was put back into working order, the clock reactivated itself and began going again. You also know that the man who took care of the clock is sick at home in bed today, and that nobody has the right to, or the ability to change the clock and reset it. And so now when you tell me that you don't think it's eleven o'clock now, as it appears to be on the wall, but it's . . . twelve o'clock, and I say to you 'why do you think it's twelve o'clock and not eleven o'clock,' and then you begin to relate to me 'well, it's not eleven o'clock as the clock indicates, it's twelve because I *know* that the electricity was off for an hour, and I *know* that this clock restarts itself, and I *know* that no one was available from five o'clock this morning until now with the ability to reset it,' and you know, I might be convinced that you are right, because you have a doubt for which you can give a reason, a valid reason, a sensible reason." (Emphasis supplied.)

At the conclusion of the Court's instructions both defendants objected to the illustration quoted above on the ground that it implied to the jury that it must *know* a fact to be true in order for a reasonable doubt to exist. The defendants also claim error in another portion of the presiding Justice's instructions, to which they did not object, whereby a reasonable doubt was explained in terms of a juror's ability to articulate it to his fellow jurors.

We have recognized on several occasions that the meaning of "proof beyond a reasonable doubt" is not easily explained to a jury and have, therefore, declined to adopt a standard definition of that phrase. *See, e. g., State v. Maxwell*, 328 A.2d 801, 806 (Me.1974), *citing State v. McKeough*, 300 A.2d 755 (Me.1973); *State v. Carey*, 303 A.2d 446 (Me.1973). We have also stated that in determining the propriety of an instruction, this Court will analyze the charge in its entirety and not by looking at certain phrases in isolation. *See State v. Stackpole*, 349 A.2d 185, 189 (Me.1975); *State v. Scott*, 343 A.2d 177, 179 (Me. 1975).

We agree with the defendants' contention that it is not necessary for a jury to have actual knowledge of facts in order to have a reasonable doubt as to the guilt of a particular criminal defendant. However, we do not agree with the defendants' claim that the instruction as given by the presiding Justice was so prejudicial as to necessitate reversal of these convictions.

During the course of his instructions on reasonable doubt, which consisted of nearly eleven pages of the printed transcript, the presiding Justice told the jury that a reasonable doubt was not a "whimsical, or fanciful doubt," but rather, it was a doubt for which one could ascribe a reason. This is a correct statement of the law. *See, e. g., State v. Maxwell*, 328 A.2d at 805; *State v. Palumbo*, 327 A.2d 613, 616 (Me.1974); *State v. Poulin*, 277 A.2d 493, 496 (Me.1971).

The illustration given by the presiding Justice must be analyzed in light of the entire charge. Immediately prior to giving this illustration, the Justice below gave an example of what would constitute a vague or speculative doubt. We are convinced that the purpose for which the presiding Justice gave these illustrations was to distinguish, for the benefit of the jury, the difference between a conjectural or unsubstantiated doubt as opposed to a doubt for which a just reason could be given. *See State v. Merry*, 136 Me. 243, 262, 8 A.2d 143, 153 (1939). While the presiding Justice, in the illustration, consistently referred to facts that were *known*, he also clearly instructed the jury that it was to

consider the testimony and credibility of each witness and to *find* the facts based on all the evidence presented.

 Nor do we agree with the defendants' contention, raised for the first time in this appeal, that the presiding Justice committed error by instructing the jury that a reasonble doubt is one that can be articulated. The Justice did not indicate to the jury that a reasonable doubt is, of necessity, one which is capable of being expressed. His instruction was merely a suggestion that the ability to explain and discuss a doubt with respect to certain evidence may be helpful to a juror in determining whether such a doubt is reasonable. Cf. *State v. Palumbo*, 327 A.2d 613, 616 (Me.1974).

Viewed in its entirety, the instructions properly informed the jury of the standard by which it was to determine the guilt or innocence of the defendants and were not so erroneous or defective as to affect any of the defendants' substantial rights. Rule 52(a), M.R.Crim.P.[1]

## THE SUFFICIENCY OF THE EVIDENCE

 At the close of all the evidence both defendants moved for judgment of acquittal. The presiding Justice denied these motions, and after the jury returned its verdicts of guilty, both defendants moved for judgment of acquittal or, in the alternative, a new trial. These motions were also denied. The defendants have, therefore, saved for appellate review the single issue of whether, in view of all the evidence presented at trial, the jury was justified in believing beyond a reasonable doubt that the defendants were guilty as charged. *See, e. g., State v. Freitas*, 349 A.2d 767 (Me.1976); *State v. Ifill*, 349 A. 2d 176, 184 (Me.1975).

The principal witness for the State was Harold Smith, an unindicted co-conspirator of the defendants. He testified in detail about a plan to rob an individual in Liberty, Maine. The defendants attack the sufficiency of the evidence to sustain their convictions, on the basis of several inconsistencies in Smith's testimony at trial. While the defendants acknowledge that the credibility of witnesses and the weight to be accorded their testimony are to be resolved by the jury, *State v. Fournier*, 267 A.2d 638, 641 (Me.1970), they argue that the witness' inconsistent testimony, when coupled with evidence of an alibi defense, renders the evidence against them inherently unreliable and insufficient to support the guilty verdicts.

We disagree.

We have repeatedly stated that it is the task of the fact finder, and not this appellate court, to resolve inconsistencies and conflicts in the testimony of witnesses. *See, e. g., State v. Bonney*, 351 A.2d 107, 110 (Me.1976); *State v. W . . . L . . ., Jr.*, 347 A.2d 588, 589 (Me. 1975). As was the case in *State v. Prudenzano*, 365 A.2d 418, 419 (Me. 1976), the jury was confronted with a purely factual issue, namely, the testimony of the State's witnesses versus the alibi evidence presented by the defendants. The jury, by its verdicts of guilty, resolved this conflicting evidence against the defendants. *State v. Craft*, 367 A.2d 612 (Me., opinion dated Jan. 7, 1977). After reviewing the entire record, we are satisfied that there was sufficient evidence to warrant the jury in believing, beyond a reasonable doubt, that the defendants conspired to commit the crime of robbery.

Finally, the defendants assert that the evidence produced at trial was insufficient to prove the crime alleged in the indictment. The grand jury charged each defendant with conspiracy to rob Joaquin Bettencourt. At trial Smith testified that he never knew the identity of the individual the defendants planned to rob. However,

---

1. "(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Smith was able to identify a photograph depicting the victim's house in Liberty, Maine, as being the scene of the robbery. A State trooper, who was familiar with the Liberty area, identified the house in the photograph as the residence of "Jack" Bettencourt. The trooper also stated that "Jack" Bettencourt was the only resident of Liberty with the name of Bettencourt.

The jury was properly instructed that in order to convict the defendants it must find that there was a conspiracy to rob Joaquin Bettencourt. There was sufficient evidence to warrant the jury in concluding that Joaquin and Jack Bettencourt were the same person.

Since we have already held that the indictment sufficiently identified the victim and was consistent with the proof, the contention of the defendants that their constitutional right against double jeopardy was violated is without merit.

The entry is:

Appeals denied.

WEATHERBEE and DELAHANTY, JJ., did not sit.

All Justices concurring.